1  **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2  Name CANDLER          Keith          W

3      (Last)                    (First)                    (Initial)

4  Prisoner Number K 25679

5  Institutional Address C S P. SAC

6  P.O. BOX 290066.   Represa. CA   95671

7                   **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**

8  Keith WAYNE CANDLER                    )

9  (Enter the full name of plaintiff in this action.)  )

10               vs.                      )

11  J.B. VAZQUEZ, H. GONZALEZ,            )
                                          )
12  D. Rocha  and M. Starr                )   **COMPLAINT UNDER THE**
                                          )   **CIVIL RIGHTS ACT,**
13                                        )   **Title 42 U.S.C § 1983**
                                          )
14                                        )
   (Enter the full name of the defendant(s) in this action)  )
15                                        )

16  *[All questions on this complaint form must be answered in order for your action to proceed.]*

17  I.    Exhaustion of Administrative Remedies.

18        [**Note:** You must exhaust your administrative remedies before your claim can go

19        forward. The court will dismiss any unexhausted claims.]

20        A.    Place of present confinement California State Prison (Sacramento)

21        B.    Is there a grievance procedure in this institution?

22                    YES (X)      NO ( )

23        C.    Did you present the facts in your complaint for review through the grievance

24              procedure?

25                    YES (X)      NO ( )

26        D.    If your answer is YES, list the appeal number and the date and result of the

27              appeal at each level of review. If you did not pursue a certain level of appeal,

28              explain why.

COMPLAINT                          - 1 -

1         1. Informal appeal _Screened out_

2

3

4         2. First formal level _screened out_

5

6

7         3. Second formal level _screened out_

8

9

10         4. Third formal level _screened out_

11

12

13     E.   Is the last level to which you appealed the highest level of appeal available to

14         you?

15                YES (X)    NO ( )

16     F.   If you did not present your claim for review through the grievance procedure,

17 explain why. _____

18

19

20 **II.**    **Parties.**

21     A.   Write your name and your present address. Do the same for additional plaintiffs,

22         if any.

23 _Keith W. CAndler # K25679_

24 _CSP. SAC_

   _P.O. Box 290066_

25 _Represa, CA 95671_

26     B.   Write the full name of each defendant, his or her official position, and his or her

27         place of employment.

28 _J.B. Vazquez, Correctional Sergeant at California Substance –_

COMPLAINT             - 2 -

1   Abuse Treatment Facility and State Prison (CSATF) in

2   Corcoran California. H. Gonzalez, Correctional Officer at

3   Salinas Valley State Prison in Soledad California. D. Rocha. Correct-

4   ional Officer at Salinas Valley State Prison. M. Starr. L.V. Nurse

5   at Salinas Valley State Prison.

    III.    Statement of Claim.

6          State here as briefly as possible the facts of your case.  Be sure to describe how each

7    defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8    cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9    separate numbered paragraph.

10   Plaintiff is Filing this Complaint against J. Vazquez,

11   H. Gonzalez and D. Rocha for using excessive force against

12   Plaintiff and Conspiracy to cover it up.

13   this Complaint is also against Defendant M. Starr for not

14   intervening and Conspiracy to cover up Plaintiff Serious

15   injuries in Violation of the United States Constitution Right

16   to be Free from Cruel and Unusual punishment.

17   2. this claim arose at Salinas Valley State Prison. Administrative

18   Segregation on 10-10-03

19   Defendant Vazquez, Rocha and Gonzalez was initially defen-

20   dants in Case # C04-5453 (PR)(civil) and was dismissed with

21   out Prejudice on 11-1-07 to Plaintiff

22

23   IV.     Relief.

24          Your complaint cannot go forward unless you request specific relief. State briefly exactly

25    what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

26   Enter Judgment granting Plaintiff Compensatory damages in the amount

27   of $ 300.000 against each Defendant, Jointly and severally, Punitive

28   damages in the amount of $ 500.000 against each Defendant and any

  additional relief this Court deem Just, Proper and equitable.

Statement of Claim Continue

1  refiling the claim after exhausting all available
2  administrative remedies see. exhibit. A
3  Defendant M. Starr was also dismissed from CASE #
4  C04-5453 during the initial court order on 5-13-05
5  for failure to state a claim. see exhibit. B
6  Plaintiff will better state his claim in this Complaint
7  against defendant starr for failure to intervene
8  and conspiracy to minimize Plaintiff serious injuries.
9  3. on October 10-2003 Correctional officers Pacheco,
10 Machuca, and Abunyen escorted Plaintiff back to his cell
11 from the shower. After Plaintiff entered his cell c/o
12 banuelos a correctional officer in charge of opening and
13 closing the cell doors did not close Plaintiff cell door.
14 Defendant Abunyen followed Plaintiff into the cell and
15 punched Plaintiff in the head and face with his fist
16 while Pacheco and Machuca watched from just out side
17 the cell. When Plaintiff began "swinging wiled" to protect
18 himself Pacheco and Machuca rushed in and began hitting
19 Plaintiff in the face, and head untill Plaintiff fell to the
20 ground. Defendant Abunyen then sat on Plaintiff lower
21 back while Pacheco and machuca kept puncting Plaintiff
22 in the face at which point banuelos set off her alarm.
23 Defendant Abunyen then resumed puncting Plaintiff
24 in the head and face causing Plaintiff lip to split
25 open. When responding staff arrived defendant Abunyen
26 put his hands on Plaintiff head and began scraping
27 Plaintiff head on the cell floor causing Plaintiff to
28 bleed. Plaintiff then had a spit net placed over

4.

1  my head by defendant AbuYen which Prevented Plaintiff
2  from breathing Properly. Plaintiff was then Placed
3  In leg Irons which was Pressed tightly into Plaintiff
4  ankles causing Pain.
5  Plaintiff was not doing any resisting at this time.
6  4. Plaintiff was then lifted up by defendant's
7  Rocha, Gonzalez, C/o AbuYen and C/o K. Bock and
8  Carried out of the cell at which Point C/o AbuYen
9  began Pulling on the chain of the hand cuffs that
10 Plaintiff was wearing, causing the metal of the
11 handcuffs to slice in to Plaintiff skin and causing
12 Plaintiff to scream in Pain.
13 5. Plaintiff was carried to a out side holding cell
14 and locked inside of it at which Point Plaintiff hand-
15 cuffs was grabed again through the hand cuff /food Port
16 by C/o K. Bock at which Point C/o K. Bock attached
17 the Retention Ring Device onto the chain of the
18 hand cuffs that Plaintiff was already wearing.
19 Plaintiff should have not been Placed on the Retention
20 Ring Device.
21 Defendants and all the other C/o's then walked back
22 into the Ad-Seg unit, leaving Plaintiff there by
23 mYSelf with the Retention Ring hanging on Plaintiff
24 hand cuffs.
25 The Retention Ring Device should have not been left
26 hanging on Plaintiff.
27 6. The Retention Ring Device is a round steel ring,
28 approximatelY 22 inches and weighs 7 Pounds.

7. Plaintiff was secured to the gate of the ~~of the~~ outside holding cell "backwards" due to the fact that the Retention Ring Device is to wide for Plaintiff to have pulled it through the food port / cuff Port. Plaintiff should not have been secured to the gate of the holding cell.

Plaintiff was forced to hold up the weight of the Retention Ring. Plaintiff could not sit down or take one step. Plaintiff could feel the restraints cutting through my wrist and ankles.

8. Plaintiff then felt myself suffocating because of the spit net cloth being over Plaintiff mouth and nose. The spit net should have not caused Plaintiff shortness of breath.

9. Approximately 20 minutes passed when defendant Rocha and Gonzalez came back out of the unit to ask Plaintiff questions (interrogate) at which Point Plaintiff asked the two defendants if they could loosen the restraints because they ~~was~~ were cutting Plaintiff skin. Defendant Rocha then said "No" and "You have to stay like that for a while". Defendant Gonzalez responded by cracking a joke about Plaintiff situation and laughed with defendant Rocha at which Point the two defendants walked back into the Ad-seg Unit.

10. Minutes later SGT Vasquez (defendant) came out of the Ad-seg unit and Plaintiff then asked him if he could loosen the restraints because they was

6.

1 Cutting through Plaintiff skin at which Point
2 "Defendant Vasquez Said" Not Now" and minutes
3 later walked back in to the Ad-Seg unit.
4 Defendant Vasquez Should have helped Plaintiff.
5 11. Plaintiff then Could feel myself about to lose
6 consciousness at which Point Plaintiff began Yelling
7 for help. Plaintiff calls for help fell on death ears.
8 Plaintiff then said" What I thought Was going to be
9 my "Last Prayer" and a few minutes later Plaintiff
10 Passed out.
11 If defendants Would have helped Plaintiff I Would
12 have never Passed out. There should have been medical
13 Staff Watching Plaintiff while Plaintiff was inside of
14 the out side holding Cell.
15 12. Approximately 2 hours had Passed When Plaintiff
16 regained Consciousness and Plaintiff realized that
17 the sun had began to set. When Plaintiff looked to
18 my right Plaintiff could see defendants ROCHA and
19 Gonzalez talking with defendant M. STARR. Defendant
20 M. STARR had a history for helping crooked officials
21 in the Administrative Segregation Unit Cover UP
22 abuses on inmates at the Prison by minimizing
23 serious injuries on medical documents and refusing to
24 offer medical treatment to inmates who obviously
25 needed it.
26 Plaintiff could hear defendants ROCHa and Gonzalez
27 telling defendant STARR that Plaintiff had Just
28 assaulted a Correctional Officer and then the three (3)

1  of these defendants began to wisper to each other.

2  Defendant STARR then walked inside of the Ad-Seg

3  unit to pass out medication to other inmates.

4  Defendant M. STARR did not respond to the initial

5  alarm activated by c/o Banuelos two(2) hours prior.

6  Approximately 8 minutes after defendant STARR went

7  into the Ad-Seg unit defendants ROCHA and Gonzalez

8  went back into the Ad-Seg unit.

9  13. Plaintiff then was able to bite a hole through the

10  cloth of the spit net which allowed Plaintiff a little

11  more fresh air to breath better.

12  At this time Plaintiff realized that defendants and

13  their co workers wanted to see Plaintiff suffering

14  so Plaintiff gave up asking any one else for

15  help to save myself from being further humiliated.

16  14. Minutes later Plaintiff was interrogated by

17  LT. ORTiz in the out side holding cell about how

18  and why the initial incident at matter happened.

19  After speaking with LT. ORTiz for a brief moment

20  LT. ORTiz advised Plaintiff that he'll be back at

21  which point he then went into the ad-seg unit.

22  15. Minutes later M. STARR, ROCHA and Gonzalez (Defendants)

23  came back out to the out side holding cell where

24  Plaintiff was. Defendant STARR told defendant ROCHA

25  and Gonzalez that he would need them to lift up the

26  spit net so that he (defendant Starr) could see my

27  facial and head injuries at which point the out side

28  holding cell that Plaintiff was in was unlocked.

1. Defendant Gonzalez then lifted the spit net
2. that Plaintiff was wearing over my head.
3. Plaintiff had a busted lip that required stitches
4. and defendant Starr did not document that
5. Plaintiff in fact had that injurie.
6. Plaintiff asked defendant Starr to tell the C/o's
7. (defendants Rocha and Gonzalez) to loosen the
8. restraints that Plaintiff was wearing because
9. they (the restraints) was cutting Plaintiff skin.
10. Defendant M. Starr then said "Its not that bad" and
11. refused to tell any one to loosen Plaintiff restraints
12. or take any off.
13. Defendant M. Starr refused to mark down Plaintiff
14. wrist and ankle injuries which he was required to
15. do by C.D.C.R Rules/Policies.
16. Plaintiff was not and could not do any kind of
17. resisting during my stay in the out side holding cell.
18. After defendant Starr finished his 7219 medical
19. document on Plaintiff he did not arrange for
20. Plaintiff to recieve any medical treatment for
21. Plaintiff serious injuries when Starr clearly
22. witnessed Plaintiff bleeding in the face.
23. Instead Plaintiff was cleared back to defendants
24. Rocha and Gonzalez at which point Plaintiff was put
25. back into the out side holding cell and forced to
26. continue to wear the spit net, leg irons, hand cuffs
27. and forced to continue to be secured to the cell
28. "backwards" due to the Retention Ring Device. still

9.

1  hanging on Plaintiff.

2  16. All that Plaintiff was wearing was boxer under

3  shorts and Plaintiff was cold during this time.

4  Also Plaintiff neck, shoulders and back began to

5  hurt and burn do to the retention ring hanging

6  of Plaintiff wrist backwards.

7  Plaintiff needed to stretch but could not.

8  Plaintiff was not allowed to use the toilet or

9  perform basic hygiene during the five hours

10  that Plaintiff was locked in and secured to the out

11  side holding cage.

12  17. Plaintiff then witnessed officials walking

13  pass Plaintiff and looking at Plaintiff at which point

14  they would laugh and make jokes of Plaintiff

15  situation which caused Plaintiff further humiliation.

16  18. Approximately five (5) hours had passed when

17  LT. ORTIZ and defendant Vasquez walked up to the

18  out side holding cell to where Plaintiff was secured

19  and began filming Plaintiff with a video cambra.

20  Plaintiff was then let out of the holding cell and

21  escorted to the LT. office where Plaintiff gave my

22  version of how and why Plaintiff was beaten.

23  Plaintiff video taped statement resulted in Plaintiff

24  getting stitches in my lip and more of Plaintiff

25  injuries documented, including a wrist injury from

26  a different Medical Doctor at the Correctional treatment

27  center (C.T.C)

28

19. The day after the incident at matter Plaintiff wrists and ankels began to scab up due to the metal of the hand cuffs and leg irons cutting into Plaintiff skin. Plaintiff wrist and ankel injuries took approximately one (1) month to heal up.

20. Plaintiff recieved a Rule Violation Report (RVR) in connection to the incident at matter. Nine (9) officials including defendants Vasquez, Rocha and Gonzalez submitted reports. Out of the nine reports that was written against Plaintiff only two (2) of the officials wrote in their reports that Plaintiff was in fact made to wear the Retention Ring Device. Not even defendant SGT. Vasquez who ordered Correctional Officer K. Bock to place the retention ring on Plaintiff documented that fact. Per C.D.C.R own rules and regulations defendants and their co workers who witnessed Plaintiff wearing the device should have documented that fact.

21. Due to defendants awful conduct against Plaintiff, Plaintiff suffered and continue to suffer sever mental and emotional pains.

22. The Retention Ring Device have been illegally used on Plaintiff three (4) times including the mentioned incident above in the Ad-Seg unit at Salinas Valley State Prison. The initial three (3) times Plaintiff did know how to practice my Prisoners Rights e.g file complaints.

23. Plaintiff have numerous witnesses names (inmates) who is willing to testify to how sadistic guards in Salinas Valley ad-seg unit also misused the Retention Ring Device on them strictly for punishment purposes.

24. There is clearly defined "Rules" on what the Retention Ring Device is used for and how to use the device. see exhibit. H

25. Defendants are being sued in their indivisual and official capacities

26.         Administrative Exhaustion

Plaintiff have tried to exhaust all Administrative remedies available to him. After recieving the Courts order in civil case # C04-5453 on 11-1-07 dismissing defendants Rocha, Gonzalez and Vasquez with out prejudice to Plaintiff refiling the claim after all available administrative remedies have been exhausted, Plaintiff filed a 602 alleal on 11-8-07 concerning said defendants actions on 10-10-03 and the courts order of Plaintiff exhaustion of administrative remedies. Plaintiff also advised the Appeals Cordinators office that the issue is in connection to alleal Log # SVSP D-03-03580 which was processed as a staff complaint by the alleals Coordinators office at Salinas valley.

27. After not recieving a response back in approximately two (2) months Plaintiff wrote a letter to the Alleals coordinators office concerning the alleal see exhibit G

12.

1  The appeals Coordinators office then Sent Plaintiff
2  the appeal back claiming it was a duplicate and that
3  the time had lapsed even when Plaintiff clearly
4  explained to them the history of the appeal see exhibit K.
5  After being screened out by the appeals office at
6  Salinas Valley for two (2) reasons Plaintiff then sent the
7  appeal to the last level (3rd Level) and asked their office
8  to render a decision or have the appeals Coordinators
9  office at Salinas Valley render a decision because
10 Plaintiff could not get second level to cooperate with
11 me. The directors level then Sent Plaintiff their
12 decision which was that Plaintiff needed to get
13 the appeal processed through second level before
14 Plaintiff send the appeal to their office.
15 Third level made this decision ~~which~~ while their office
16 also knew the appeal history.
17 28. Defendants cannot now claim that Plaintiff
18 did not exhaust my administrative remedies
19 because the reasonable import of the [Second level
20 decision] is that Plaintiff is barred from filing
21 the appeal.

1

2

3

4

5    I declare under penalty of perjury that the foregoing is true and correct.

6

7    Signed this __23__ day of __April_____, 20 __08__

8

9                         _Keith Candler_

10                         (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                         - 14 -

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit: Extraction From the Courts
ordering Plaintiff to refile this claim after
exhausting Plaintiff Administrative Remedies on 11-1-07.
Number of pages to this Exhibit: _____1_____ pages.

JURISDICTION:  (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| ✓ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

defendants received, and (3) a picture of the "retention ring" device. (Candler Decl. Supp. Mot. Compel at 4).

Defendants have agreed to allow plaintiff to view his own video-taped interview, but object to producing the evidence generated by the internal affairs investigation, including the video-taped interviews of other inmates. Defendants also object to producing any transcripts, should any exist, of the recorded use of the "retention ring" device on other inmates. (Opp. Mot. Compel at 2.)

When plaintiff filed his motion to compel, and when defendants responded thereto, two claims were pending in the present action – the cell claim and the handcuffs claim. Plaintiff's discovery requests appear to seek evidence pertinent to both claims, although it is unclear to the Court which requests correspond to which claim or claims. Because the Court determined earlier in this order that plaintiff's handcuffs claim must be dismissed, some of plaintiff's discovery requests may no longer be at issue. Accordingly, in the interest of the efficient use of the Court's judicial resources, the Court will deny plaintiff's motion as premature. Such denial is without prejudice, and plaintiff may file a renewed motion to compel, containing only those discovery requests pertaining to plaintiff's one remaining claim, the cell claim. The motion shall be briefed according to the schedule set forth below.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion to dismiss plaintiff's handcuffs claim for failure to exhaust administrative remedies is GRANTED, and defendants Gonzalez, Rocha and Vasquez are hereby DISMISSED from this action. The dismissal of this claim is without prejudice to plaintiff's refiling the claim after all available administrative remedies have been exhausted.

2. Defendants' motion to dismiss plaintiff's cell claim against defendants Abuyen, Banuelos, Machuca and Pacheco for failure to exhaust administrative remedies and, alternatively, for failure to state a claim upon which relief can be granted, is DENIED.

3. Plaintiff's motion to compel discovery is DENIED without prejudice. No later than **thirty (30)** days from the date of this order plaintiff may file with the Court and serve on

13

# EXHIBIT COVER PAGE

B

**EXHIBIT**

Description of this Exhibit: Extraction From the Courts
Ordering Defendant M.Starr For Failure to state A
Claim on 5-13-05 dismissed
Number of pages to this Exhibit: ___1___ pages.

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Appellate Court |
| ☐ | State Supreme Court |
| ✓ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

1

**CONCLUSION**

2          In light of the foregoing, the Court orders as follows:

3          1.    The Clerk of the Court shall issue summons and the United States Marshall

4  shall serve, without prepayment of fees, a copy of the complaint in this matter, all

5  attachments thereto, and a copy of this order upon **Correctional Officers J. Abuyen, R.**

6  **Machuca, J. Pacheco, M. Banuelos, D. Rocha, H. Gonzalez and Sergeant J. Vasquez**

7  at **Salinas Valley State Prison.** The Clerk shall also serve a copy of this order on

8  **plaintiff** and the **California Attorney General's Office.**

9          2.    The claims against defendant Starr are DISMISSED for failure to state a

10  cognizable claim for relief.

11          3.    In order to expedite the resolution of this case, the Court orders as follows:

12                a.    No later than **sixty (60) days** from the date of this order, defendants

13  shall file a motion for summary judgment or other dispositive motion. The motion shall be

14  supported by adequate factual documentation and shall conform in all respects to Federal

15  Rule of Civil Procedure 56, including all of the medical records relating to the allegations

16  in the complaint.

17          **Defendants are advised that summary judgment cannot be granted, nor**

18  **qualified immunity found, if material facts are in dispute.  If any defendant is of the**

19  **opinion that this case cannot be resolved by summary judgment, he shall so inform**

20  **the Court prior to the date the summary judgment motion is due**.

21          All papers filed with the Court shall be promptly served on plaintiff.

22                b.    Plaintiff's opposition to the dispositive motion shall be filed with the

23  Court and served on defendants no later than **thirty (30) days** from the date defendants'

24  motion is filed. The Ninth Circuit has held that the following notice should be given to

25  plaintiffs:

26                The defendants have made a motion for summary
          judgment by which they seek to have your case dismissed.  A
27          motion for summary judgment under Rule 56 of the Federal
          Rules of Civil Procedure will, if granted, end your case.
28                Rule 56 tells you what you must do in order to oppose a

United States District Court
For the Northern District of California

# EXHIBIT COVER PAGE

C

EXHIBIT

Description of this Exhibit: A Published Article by the Monterey County Herald In Re Corruption by Salinas Valley officials during Plaintiff Stay in Ad-Seg

Number of pages to this Exhibit: __3__ pages.

JURISDICTION:  (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| ☑ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |



Monterey County
**The Herald**

*8 Upper Ragsdale Drive*
*Monterey, Ca 93940*
*P.O. Box 271 (93942)*

*December 3, 2007*

*Dear Mr. Candler,*

*Please find enclosed a copy of the story you requested in your letter dated November 26, 2007,*
*"Retiring Warden Blows Whistle".*
*If you have any questions or if there is anything that I can assist you with please do not hesitate*
*to call or email me. Thank You.*

*Sincerely,*

*Carol Lancaster*
*Administrative Assistant to*
*The Executive Editor/Opinion Editor*
*The Monterey County Herald*
*Newsroom*
*(831) 648-1195 direct*
*(831) 655-2749 fax*
*clancaster@montereyherald.com*



**Paper: Monterey County Herald, The (CA)**
**Title: Retiring warden blows whistle**
**Date: September 3, 2004**

A veteran Department of Corrections official who headed Salinas Valley State Prison for six months says correctional officers there set up prisoners for prosecution and covered up instances of brutality by the staff.

Edward Caden retires today after 28 years with the state prison system, including a term as chief deputy **warden** at Salinas Valley State Prison and six months as acting **warden**.

In the time he managed the prison, Caden said he found that correctional officers planted contraband on prisoners, setting them up for criminal prosecution. Characterizing corruption at the prison as "pretty well organized," he said Thursday that guards beat prisoners and then conspired to cover it up.

Caden was relieved of the acting **warden** position in early August following the short-lived return of **Warden** Anthony Lamarque. Caden was then transferred to what he called a non-existent bureaucratic position in Sacramento.

He said Thursday he is **retiring** because he could not effectively fight wrongdoing in the prison system while working in it.

"Woe to anybody who tries to upset the little apple cart up there," Caden said in a telephone interview from Sacramento.

Caden is not the first to allege misconduct at the prison. Two former guards there have filed lawsuits containing allegations of misconduct by fellow guards and their superiors. One former officer, Donald Vodicka, testified about prison corruption in front of a state Senate committee in January. He described a gang of rogue prison guards, calling themselves the Green Wall, that had been formed to enforce a code of silence at the maximum-security prison near Soledad.

He said the group had intimidated inmates and guards and even had members within the prison's internal affairs unit.

Investigating similar allegations, the state Office of the Inspector General concluded in a January report that Lamarque had prevented timely investigation into the activities of the Green Wall and intentionally misled state investigators about the guard group.

A month later, seemingly as a result of the state report, Lamarque went on sick leave and Caden, who had been his chief deputy, took over.

Some prison employees have said the change was dramatic. Responding to his own findings and those of outside investigators, Caden said he started mandatory ethics training for guards and ended preferential treatment for favored employees. He said he initiated several criminal investigations into misconduct at the prison, some of which are still under way.

On Aug. 2, Lamarque returned from sick leave to retake the leadership at Salinas Valley State Prison. But, following clashes with Caden over reforms, Lamarque worked just five days before returning to disability leave.

At the end of the same week, on Aug. 9, Caden was transferred to Sacramento. Anthony Kane, formerly interim **warden** at the Correctional Training Facility in Soledad, was appointed to serve as acting **warden** at the nearby Salinas Valley State Prison. The move leaves Kane's chief deputies in charge at the training facility.

State corrections spokeswoman Terry Thornton said Lamarque could return to his old job if his medical problems diminish.

"This is a temporary situation," she said.

Caden said reinstating Lamarque would be a big mistake if the state is interested in cleaning up the prison. He said Lamarque's return in August immediately energized wayward factions in the prison hierarchy, factions that Caden characterized as a "terror regime."

"There are a lot of people at the institution who are just terrified by this guy," Caden said.

Lamarque could not be reached to comment Thursday. However, Lt. Eloy Medina, spokesman for Salinas Valley State Prison, said Lamarque had embraced the changes Caden made in his absence.

"During his tenure, Mr. Caden reinforced to staff through training many of the ideals Mr. Lamarque believes in. Ethics and professionalism, communication at all levels, and positive, long-term goals for the institution," Medina said in a written statement.

"When Mr. Lamarque returned he applauded the job Mr. Caden did in his absence."

But Caden said Lamarque blew off the results of internal and external investigations.

"He gave me his assurances that he wasn't aware of the things that were going on.," said Caden. "He knew that there were eight boxes of investigative materials in the prison, but he never read them."

In the other lawsuit filed by a former correctional officer, Manuel Rodriguez contends in a Monterey County lawsuit that officials at Salinas Valley pressed prosecutors to charge him with a crime because he had blown the whistle on staff misconduct leading to an inmate riot in 1999.

The allegations about Salinas Valley State Prison have emerged against a larger backdrop of legislative demands for reform of California's penal system. The Department of Corrections has received a new set of top administrators and the guard's union, long a potent force in state politics, has lost some influence but remains entrenched in Sacramento.

Jonathan Segal can be reached at 646-4345 or jsegal@montereyherald.com.

----

All contents ©2004 MONTEREY COUNTY HERALD and may not be republished without written permission.

Copyright (c) 2004 The Monterey County Herald

Author: JONATHAN SEGAL
Section: Top Story
Page: A1
Copyright (c) 2004 The Monterey County Herald

# EXHIBIT COVER PAGE



**EXHIBIT**

Description of this Exhibit: Four letters from ROSEN, BIEN & ASARO
Concerning the illegal use of the Retention Ring and
Plaintiff Mental deterioration
Number of pages to this Exhibit: __6__ pages.

JURISDICTION: (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Appellate Court |
| ☐ | State Supreme Court |
| ✓ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

ERNEST GALVAN
JANE KAHN
NAJEEB KHOURY
THOMAS NOLAN
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

December 2, 2003

CONFIDENTIAL - LEGAL MAIL
Mr. Keith Candler, K-25679
SVSP
PO Box 1060
Soledad, CA 93960

   Re: Coleman v. Schwarzenegger
     Our File No. 489-3

Dear Mr. Candler:

  Recently you sent our office a letter describing abuse at the hands of correctional staff at SVSP. The events you describe sound extremely upsetting and stressful. The Coleman Case focuses on Mental Health issues, and does not deal specifically with staff treatment. However, we do understand that incidents like the one you described impact our clients mental health. Currently, our office is investigating CDC's use of the detention device called the triangle that you mention in your letter.

  Do you know if you have a chrono in your file allowing staff to use this device? Do you know if this device is used regularly? If you know anyone else on whom staff have used the triangle please ask them to write to our office. Once we have gathered enough information, an attorney from our office is going to write a letter to the Attorney General's Office objecting to this practice.

  I am enclosing two informational pamphlets describing how you can go about dealing with staff mistreatment. One of them includes the address for the Office of the Inspector General. Their office is a good resource and you should feel free to write to them.

  Take care.

         Sincerely yours,

         ROSEN, BIEN & ASARO, LLP

         By: Shira J. Gans
         Paralegal

STAFF MISCON. / BRUT.
SJG:pj

* MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
** MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
JANE KAHN
THOMAS NOLAN
AMY WHELAN
MARAKA .... WILLITS
SARAH OLSON ZIMMERMAN **

ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

May 15, 2004

CONFIDENTIAL - LEGAL MAIL
Mr. Keith Candler, K-25679
SVSP
PO Box 1060
Soledad, CA 93960

> Re:  Coleman v. Schwarzenegger
> Our File No. 489-3

Dear Mr. Candler:

I am writing regarding the mistreatment that you are experiencing at the hands of the officers in your housing unit. The experiences you described in your letter must be frightening and stressful. We understand that staff misconduct has a great impact on our clients' mental health. I want you to know that staff treatment of mental health care inmates is an issue that we are constantly trying to improve as we monitor the *Coleman* case.

Training staff to work with a mentally ill population is part of the *Coleman* case. We have worked with CDC to develop training programs that teach staff to respond appropriately to inmates with mental illness. We are aware that these training programs are not always effective and are currently working with CDC headquarters and, in some instances, the Office of the Inspector General to address systemic problems with staff misconduct.

We are also aware that excessive use of force against mentally inmates is a significant problem. The Special Master and his experts are interested in investigating this systemic problem of excessive use of force. The Special Master and his experts tour each institution approximately twice a year. During these visits, they review every use of force incident to determine if staff behaved appropriately.

To assist the Special Master and his experts in their monitoring of this issue, our office is gathering information from our clients about their experiences with excessive use of force. If you feel comfortable and would like to share your experiences with our firm, please send us a letter describing the incident. Make sure to include the names of the officers involved, the officers' watch, the housing unit where the incident occurred and other relevant details. If you would like your name to be kept confidential, please express this in your letter. Our firm will then provide this information to the Special

CONFIDENTIAL - LEGAL MAIL
May 15, 2004
Page 2

Master to aide him in his monitoring and investigation and possibly to the Office of the Inspector General. We want to be clear that our firm is attempting to address this problem at a systemic level and cannot investigate each incident of excessive use of force. We also do not have the authority to force CDC to order an investigation.

I will write to the inmate whose name you provided us with. Thank you for reporting that incident to our office.

Sincerely yours,

ROSEN, BIEN & ASARO, LLP

By: Shira J. Gans
Paralegal

Original
SJG:pj

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO

HOLLY BALDWIN
ERNEST GALVAN
JANE KAHN
MEGHAN LANG
THOMAS NOLAN
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN **

### ROSEN, BIEN & ASARO, LLP
ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

August 16, 2004

CONFIDENTIAL - LEGAL MAIL
Keith Candler, K-25679
Salinas Valley State Prison, D-8-110
PO Box 1060
Soledad, CA 93960

Re:    Coleman v. Schwarzenegger
         Our File No. 489-3

Dear Mr. Candler:

I am writing in response to your letter of August 8, 2004, which our office received on August 13, 2004. We were extremely concerned to learn that your mental health continues to decompensate in ad seg and you are having thoughts of harming yourself as a result of your safety fears.

When we received your letter, we sent a fax to the Coleman Project Team (a group of people organized by the CDC to investigate and monitor emergency situations relating to the *Coleman v. Schwarzenegger* case) alerting them of the problems you are experiencing. We wanted to make sure that you were being seen and cared for at Salinas Valley. Hopefully, this fax resulted in you being seen by a mental health clinician to discuss your mental health issues.

Were you seen by a member of the mental health care staff in response to our fax to the Coleman Project Team? If so, what was the result? Are you comfortable discussing your issues with your case manager? Are you experiencing any problems with your psychotropic medications? Are you feeling any more stable than when you last wrote?

Please keep us informed of your mental health care issues at Salinas Valley. Thank you for writing and take care.

Sincerely,

ROSEN, BIEN & ASARO, LLP

By: Daniel Markman
Paralegal

DM:pj

*   MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
**  MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

SANFORD JAY ROSEN *
MICHAEL W. BIEN
ANDREA G. ASARO **
ERNEST GALVAN

HOLLY BALDWIN
GAY C. GRUNFELD
JANE KAHN
MEGHAN LANG
ANNE MANIA
THOMAS NOLAN
KATHERINE SHER
JANET TUNG
AMY WHELAN
MARAKA L. WILLITS
SARAH OLSON ZIMMERMAN ***

## ROSEN, BIEN & ASARO, LLP

ATTORNEYS AT LAW
EIGHTH FLOOR
155 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE
(415) 433-6830

FAX
(415) 433-7104

EMAIL
rba@rbalaw.com

January 9, 2006

CONFIDENTIAL LEGAL MAIL
Keith Candler, K-25679
SVSP - PO Box 1020
Soledad, CA 93960

      Re:    Coleman v. Schwarzenegger
            Our File No. 489-3

Dear Mr. Candler:

      I am writing in response to your last letter addressed to our office, which we received on November 7, 2005. I am also writing in response to the letter you sent to the Prison Law Office, dated October 17, 2005, which was forwarded to our office on November 3, 2005. We work with the Prison Law Office on the *Coleman* case and are responsible for prisoner correspondence from SVSP.

      We were very concerned to read that you were held with a retention ring for punitive reasons. It is important for us to know more information. You said that the retention ring was on you used three times. On what dates was it used? In what housing unit were you at the time? What were the circumstances? Were you on suicide watch? You state in your letter that the retention ring is being used against mentally ill inmates in D-1 and D-2. Do you have any more information about the specific circumstances under which the retention was used against these inmates? I am enclosing several postage paid envelopes. If you are able, please give them to these inmates, particularly those on whom the retention ring was used while on suicide watch, and encourage them to write to us about their experience with the retention ring.

      On a tour last year with the court appointed experts, we were able to verify the unlawful use of the retention ring by correctional officers on inmate-patients who report feeling suicidal in the ad-seg units. The officers are not supposed to use the retention ring on suicidal inmates while they wait for mental health clinicians to come to the ad-seg units to assess them. After the tour, we were assured that this practice had ceased. It is not prohibited to use the retention ring in certain circumstances, but if the retention ring is still being used for inmates on suicide watch, this is a very serious issue that we would like to address. I am enclosing a postage-paid envelope for you to use when you respond.

*    MEMBER OF THE CONNECTICUT AS WELL AS THE CALIFORNIA BAR
**   OF COUNSEL
***  MEMBER OF THE ILLINOIS AS WELL AS THE CALIFORNIA BAR

Keith Candler, K-25679
January 9, 2006
Page 2

While we are very concerned about the retention ring issue, we unfortunately cannot help you with an individual lawsuit. Due to the size of our caseload and involvement in several prisoner class actions, we simply do not have the resources to take on or examine new cases brought by individual inmates. However, I am enclosing some information about filing a state tort claim and 1983 lawsuit. I am also enclosing a list of Frequently Asked Questions (FAQ) we have developed to give our clients a better understanding of the *Coleman* case and issues we are currently working on. I hope you find this information helpful.

Thank you again for your letters.

Sincerely,

ROSEN, BIEN & ASARO, LLP

*Vanessa K Carr*

By: Vanessa Carr
Paralegal Clerk

VC:vkc
Encl: 4 SASE, FAQ, 1983, Tort-state

# EXHIBIT COVER PAGE

| E |
|---|
| EXHIBIT |

Description of this Exhibit: Disciplinary Reports showing that defendants did not document that Plaintiff was forced to wear the Retention Ring Device For 5 hours.

Number of pages to this Exhibit: __15__ pages.

JURISDICTION:  (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| ✓ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT

PAGE  1  OF  1

CDC 837 C-1

| NAME (LAST, FIRST, MI)<br>Vazquez J.B. | | | BADGE NUMBER<br>56512 | INCIDENT DATE<br>10/10/03 | | INCIDENT LOG NUMBER<br>SVP-FD2-03-10-0503 | |
|---|---|---|---|---|---|---|---|
| LENGTH OF SERVICE<br>6 Years 5 Months | | POST DESCRIPTION<br>D AD-SEG SGT | | INCIDENT TIME<br>1607 Hours | REPORT DATE<br>10/10/03 | | |
| RDO's<br>T/F | | DUTY HOURS<br>1400-2200 | | INCIDENT LOCATION<br>ASU D2 Cell 101 Cell Front | | | |
| DESCRIPTION OF INCIDENT/CRIME<br>BATTERY ON A PEACE OFFICER NECESSITATING STAFF U.O.F. PHYSICAL | | | | | | CCR SECTION/RULE<br>3005 (c) | |

| YOUR ROLE | | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | | | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|---|---|---|---|---|
| | PRIMARY | C/O J. Abuyen | (s) | C/O D. Rocha | (s) | (s) Chanler K25679 | D2 101L |
| X | RESPONDER | C/O J. Pacheco | (s) | C/O D. Gonzalez | (s) | | |
| | WITNESS | C/O R. Machuca | (s) | | | | |
| | VICTIM | C/O M. Banuelos | (s) | | | | |
| | CAMERA | C/O K. Bock | (s) | | | | |

| FORCE USED BY YOU | | LETHAL WEAPONS | | LESS LETHAL WEAPONS | | NUMBER OF ROUNDS FIRED | | FORCE OBSERVED BY YOU | |
|---|---|---|---|---|---|---|---|---|---|
| | LETHAL | | MINI-14 | | 37MM | | | | LETHAL |
| | LESS LETHAL | | SHOTGUN | | BATON | | | | LESS LETHAL |
| | PHYSICAL | | HANDGUN | | OC | | | X | PHYSICAL |
| X | NONE | | OTHER_N/A | | OTHER_____N/A | | | | NONE |

| EVIDENCE COLLECTED | | EVIDENCE DESCRIPTION | | DISPOSITION | | WEAPON | | BIO HAZARD | |
|---|---|---|---|---|---|---|---|---|---|
| X | YES | N/A | | N/A | | | YES | | YES |
| | NO | | | | | X | NO | X | NO |

| REPORTING STAFF INJURED | | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | | SCIF 3301/3067 COMPLETED | |
|---|---|---|---|---|---|---|---|
| | YES | N/A | N/A | | YES | | YES |
| X | NO | | | X | NO | X | NO |

**NARRATIVE:**

On 10/10/03 while performing my duties as D Facility 1&2 Ad-Seg Sergeant I responded to an audible alarm in D2 A section, as I arrived I observed Inmate Chanler (K25679,D2-101L) in his assighned cell in the prone position C/O Abuyen was on top of Inmate Chanlers upper torso, utilizing his body weight to restrain I/mChanler from getting up, he then gained control of I/m Chanlers right arm and C/O Pacheco Gained control of his left free arm. C/O Machuca then secured the loose mechanical hand restraints, During this time I/m Chanler was attempting to kick staff with his legs I then instructed C/O Bock to apply leg restraints as C/O Rocha retrieved them, after the leg restraints were applied the I/m was still resisting staff.The I/m was spitting, C/O Abuyen called for a spit mask, after the spit mask was secured I gave an order to pick up I/m Chanler and proceed to the outdoor walk alone yard cell#1, during this time the inmates actions and close proximity inside the cell did not allow for C/O Abuyen to switch out during the escort it was all one motion so therefore the immediate responding staff under my direction continued with the escort identified as C/O Gonzalez held I/m Chanlers left arm and midsection C/O Abuyen held his right arm C/O Bock held his left leg and C/O Rocha held his right leg as they carried him to the walk alone cell, I the instructed C/O Abuyen, C/O Pacheco, And C/O Machuca to go to CTC for medical evaluation and exposure packets. An 7219 was conducted on I/m Chanler by L.V.N M.Star, I/m Chanler was then cleared and rehoused in D3 AD-SEG.

I/m Chanler made allegations of inappropriate use of force by staff to Lt. Ortiz, after conducting video tape interview of I/m Chanler, I handed the tape to Lt.Ortiz.

At approximately 2000 Hours I then took 11 pictures: # 1 through # 8 of C/O Abuyen's facial injuries, picture # 8 of C/O Pacheco injuries sustained to his right hand, and pictures #10 and #11 of C/O Machuca arm injuries all sustained during the incident. All employees were offered post-trauma and all declined. This concludes my report.

| NAME/TITLE/SIGNATURE OF REPORTING EMPLOYEE<br>Sgt J/B, Vazquez | BADGE / I.D. #<br>56512/2862881 | DATE<br>10/10/03 |
|---|---|---|
| REVIEWER'S SIGNATURE | APPROVED | CLARIFICATION NEEDED | DATE |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT

CDC 837 C-1 (1/99)

PAGE __1__ OF __2__

| NAME (LAST, FIRST, MI) | | BADGE NUMBER | INCIDENT DATE | INCIDENT LOG NUMBER |
|---|---|---|---|---|
| GONZALEZ H. | | 61546 | 10-10-03 | SUT-FD2-03-10-05 |

| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | REPORT DATE |
|---|---|---|---|
| 3 years | D-1 S&E | 1607 | 10-10-03 |

| RDO: | DUTY HOURS | INCIDENT LOCATION |
|---|---|---|
| S/S | 1400 - 2700 | D-2 A$ Section Cell 101 |

| DESCRIPTION OF INCIDENT / CRIME | CCR SECTION / RULE |
|---|---|
| BATTERY ON A PEACE OFFICER | 3005 (c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACES-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| PRIMARY | (S) SGT J. VASQUEZ | (S) I/M CHANLER (K-25679 Cell 101) |
| RESPONDER [X] | (S) C/O K. BOCK | |
| WITNESS | (S) C/O J. ABUYEN | |
| VICTIM | (S) C/O J. PACHECO | |
| CAMERA | (6) C/O D. ROCHA | |

| FORCE USED BY YOU | LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | LESS THAN LETHAL WEAPONS | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| LETHAL | MINI - 14 | | 37MM | LETHAL |
| LESS LETHAL | SHOTGUN | | BATON | LESS LETHAL |
| PHYSICAL ✓ | HANDGUN | N/A | OC | PHYSICAL ✓ |
| NONE | OTHER [X] N/A | | OTHER ✓ N/A | NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIO HAZARD |
|---|---|---|---|---|
| YES ✓ | 1 VIDEO TAPE A.G.H.G | Processed it into Evidence Locker #3 | YES | YES |
| NO | | | NO ✓ | NO ✓ |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF3301 / 3067 COMPLETED |
|---|---|---|---|---|
| YES | N/A | N/A | YES | YES |
| NO ✓ | | | NO ✓ | NO ✓ |

NARRATIVE:

ON FRIDAY OCTOBER 10, 2003 AT APPROXIMETLY 1607 HOURS WHILE PERFORMING MY DUTIES AS D-1 S&E. I RESPONDED TO A AUDIBLE ALARM IN D-2 A SECTION CELL 101 OCCUPIED BY I/M CHANLER (K-25679). UPON ARRIVAL I OBSERVED I/M ChanLER IN THE CELL AND IN A PRONE POSITION RESISTING STAFF BY ATTEMTING TO KICK OFFICERS J. ABUYEN & J. PACHECO. OFFICER K. BOCK GRABBED HIS Left & Right ANKLE AND PLACED I/M CHANLER IN LEG REISTRAINTS. SGT. J. VASQUEZ INSTRUCTED ME TO ASSIST IN CARRING I/M ChanLER TO THE WALK ALONE YARD #1. OFFICERS J. ABUYEN GRABBED HIS RIGHT ARM AND I GRABED HIS Left ARM, OFFICERS D. ROCHA & K. BOCK Grabbed his LOWER EXTREMETIES. I/M ChanLER WAS 7219 CLEARED AND REHOUSED WITHOUT FURTHER INCIDENT

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| H. GONZALEZ | 61546 / 786245 | 10-10-03 |

| REVIEWER'S SIGNATURE | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|
| SGT J. VASQUEZ | [X] | [ ] | 10/10/03 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C-2 - SUPPLEMENT**
CDC 837 C-2

PAGE _2_ OF _2_

INCIDENT LOG NUMBER

_SUP-FO2-03-10-0503_

| NAME (LAST, FIRST, MI) | BADGE NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| _GONZALEZ H_ | _61546_ | _10-10-03_ | _1607_ |

TYPE OF INFORMATION

☑ CONTINUATION OF REPORT     ☐ ADDITIONAL INFORMATION     ☐ CLARIFICATION REQUEST

NARRATIVE:

_IN D.3, AT ABOUT 1730 HOURS I'm Chanler REFUSED_

_His DINNER TRAY. RESPONDING STAFF LEFT THE SEEN THUS_

_REQUIRING INVOIVED STAFF TO ESCORT I'm CHANLER TO THE WOLK_

_Alone YARD #1, SGT J. VASQUEZ OFFERD ME. EPTP_

_AND I DECLAINED. AT About 0038 hours I Received one video_

_TAPE FROM L.T M ORTIZ and Processed it into evedence Locker_

_#3 AT 0050 HOURS._

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | | BADGE / I.D. # | DATE |
|---|---|---|---|
| H. GONZALEZ | | _61546 / 286245_ | _10.10.03_ |
| REVIEWER'S SIGNATURE SGT J.R. VAZQUEZ | APPROVED ☒ | CLARIFICATION NEEDED ☐ | DATE _10/10/03_ |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT
CDC 837 C-1

PAGE___1___OF___1___

| NAME (LAST, FIRST, MI) | BADGE / I D # | INCIDENT DATE | INCIDENT LOG NUMBER |
|---|---|---|---|
| ORTIZ, M. E. | 13722 / 2863012 | 10/10/03 | SVP-FD2-03-10-0503 |

| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | REPORT DATE |
|---|---|---|---|
| 18 Years 03 Months | Facility D & ASU LT. | 1607 Hours | 10/10/03 |

| RDO'S | DUTY HOURS | INCIDENT LOCATION |
|---|---|---|
| Tuesday and Wednesday | 1400 - 2200 | Administrative Segregation Unit D2 Cell 101 front |

| DESCRIPTION OF INCIDENT/CRIME | CCR SECTION/RULE |
|---|---|
| Battery on Staff (Peace Officer) necessitating Staff UOF-Physical | 3005 (c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | (S) J. Vazquez, SGT | (S) CHANDLER |
| ☒ RESPONDER | (S) J. Abuyen, C/O | (K-25679, D2-101L) |
| ☒ WITNESS | (S) R. Machuca, C/O | |
| ☐ VICTIM | (S) J. Pacheco, C/O | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | LETHAL WEAPONS | LESS LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| ☐ LETHAL | ☐ MINI-14 | ☐ 37MM | | ☐ LETHAL |
| ☐ LESS LETHAL | ☐ SHOTGUN | ☐ BATON | | ☐ LESS LETHAL |
| ☐ PHYSICAL | ☐ HANDGUN | ☐ OC | | ☐ PHYSICAL |
| ☒ NONE | ☐ OTHER  N/A | ☐ OTHER  N/A | N/A | ☒ NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIO HAZARD |
|---|---|---|---|---|
| ☒ YES | One (1) Head Injury-Allegation of Inappropriate UOF videotape. | Surrendered to C/O H. Gonzalez to process as evidence. | ☐ YES ☒ NO | ☐ YES ☒ NO |
| ☐ NO | | | | |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF 3066/3067/3301 COMPLETED |
|---|---|---|---|---|
| ☐ YES | N/A | N/A | ☐ YES | 3066 = ☐ YES ☒ NO |
| ☒ NO | | | ☒ NO | 3067 = ☐ YES ☒ NO |
| | | | | 3301 = ☐ YES ☒ NO |

NARRATIVE:

On Friday, October 10, 2003, at approximately 1607 hours, I responded to an Administrative Segregation Unit "ASU" D2 Housing Unit Personal Alarm from the Facility D Lieutenant's Office. Once on scene Sergeant J. Vazquez, D1 & 2 ASU Program Sergeant, advised me that Officer J. Abuyen, D2 S&E, was struck in the face by inmate **CHANDLER (K-25679, D2-101L)** and Officers R. Machuca, D2 Floor #2, & J. Pacheco, D2 Floor #1, were injured while both used physical force on **CHANDLER** to subdue his attacks and overcome his resistance.

I operated the video camera as Sergeant Vazquez escorted **CHANDLER** from the ASU D1 & 2 Walk Alone Yard Cell #1 to the ASU D1 & 2 Lieutenant's Office for a Videotape Interview due to his Head Injuries and voiced Allegation of Inappropriate Use of Force by staff. On 10-11-03, at approximately 0030 hours, I surrendered one (1) Head Injury-Allegation of Inappropriate Use of Force by staff videotape to Officer H. Gonzalez, D1 S & E, for processing as evidence.

Lastly, Sergeant Vazquez took a total of eleven (11) Polaroid Photographs of the above noted Officers injuries and I placed the incident date, time, number on each photo. & numbered each photo #1 through #11, and initial each photo.

| NAME-TITLE SIGNATURE OF REPORTING EMPLOYEE | BADGE / I D # | DATE |
|---|---|---|
| I. ORTIZ, Correctional Lieutenant | 13722 / 2863012 | 10/11/03 |

| REVIEWER'S SIGNATURE | APPROVED ☒ | CLARIFICATION NEEDED ☐ | DATE 11-4-03 |
|---|---|---|---|

STATE OF CALIFORNIA
**Crime/Incident Report**
**PART C-1 - SUPPLEMENT**                                    **Page: 1 of**
CDC 837 C-1

| Last Name, First Name Initial | | Badge / ID # | Incident Date | | Incident Log Number |
|---|---|---|---|---|---|
| Abuyen , J | | 62266/2861418 | 10OCT03 | | SVP-FD2-03-10-0503 |
| Length of Service | Post Description | | Incident Time | | Report Date |
| 4 YEARS 1 MONTH | D2 SEARCH AND ESCORT | | 1607 | | 10OCT03 |
| RDOs | Duty Hours | | Incident Location | | |
| M/T | 1400/2200 | | D FACILITY HOUSING UNIT TWO CELL 101 | | |
| Description of Incident/Crime | | | | CCR Section Rule | |
| BATTERY ON A PEACE OFFICER | | | | 3005 ( C ) | |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | | Inmates Involved (preface S-Suspect, V-Victim, W-Witness) | |
|---|---|---|---|---|
| ☒ Primary | SGT. VASQUEZ | C/O GONZALEZ | CHANDLER K-25679 | |
| ☐ Responder | C/O MACHUCA | C/O ROCHA | | |
| ☐ Witness | C/O PACHECO | | | |
| ☐ Victim | C/O BANUELOS | | | |
| ☐ Camera | C/O BOCK | | | |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton  N/A | ☐ Shotgun N/A | N/A | ☐ Less Lethal |
| ☒ Physical | ☐ OC | ☐ Handgun | | ☒ Physical |
| ☐ None | ☐ Other: | ☐ Other | | ☐ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☒ Yes |
| ☒ No | | | ☒ No | ☐ No |

| Reporting Staff Injured | Description of Injury | Located Treated | Bodily Fluid Exposure | SCIF 3301/3067 |
|---|---|---|---|---|
| ☒ Yes | BRUISED RIGHT | GREENFIELD | ☒ Yes | ☒ Yes |
| ☐ No | EYE CUT LIP | URGENT CARE | ☐ No | ☐ No |

Narrative: On Friday October 10, 2003 at approximately 1607 hours while performing my duties as D Facility Housing Unit Two Search and Escort Officer . Officer Pacheco and I were escorting Inmate Chandler K-25679 from A pod lower tier shower to cell 101. I instructed Control Officer Banuelos to open cell 101 cell door. I observed what appeared to be manufactured alcohol in a state sheet. I asked inmate Chandler." What's under your bunk ". inmate Chandler said," What the fuck you think?" I entered cell 101 and removed from under the lower bunk a state issued sheet with all four corners tied together. I Untied the knots the state sheet contained state clothing and a blanket balled up. Inmate Chandler said," that's right bitch, got you pigs scared, you know what you got coming from the crips bitch". I exited the cell I ordered inmate to enter the cell. Inmate Chandler stepped in to the cell. Inmate chandler pulled his left hand through the hand cuff and turned to his right, striking me on my right temple and eye area with his left fist. Causing my eye to bruise and swell. As inmate chandler moved towards me I struck inmate chandler with my right and left fist on his facial area. Inmate chandler struck at me with his right fist I attempted to dodge inmate chandlers fist and was struck by the hand cuff attached to his right  wrist causing a cut on the left side of my upper lip. I struck inmate Chandler with my left fist on his facial area. Inmate Chandler attempted to strike me with his left fist. Officer Pacheco took control of inmate Chandlers left arm before it struck me. I took control of inmate chandlers right arm Inmate Chandler was kicking officer Pacheco and I. I was holding inmate Chandlers right wrist with my with my left hand and with my right hand I took control of

| Reporting Staff's Signature | | Date |
|---|---|---|
| ABUYEN | | 10OCT 03 |
| Reviewer's Signature | Approved | Clarification Needed | Date |
| SGT  J. BVasquez | ☒ | ☐ | 10 / 10 /05 |

STATE OF CALIFORNIA
**Crime/Incident Report**
**PART C-2 - SUPPLEMENT**                                    **Page: 2 of 2**
CDC 837 C-2                                    Incident Log Number SVP-FD2-03-10-0503

| Last Name, First Name Initial | Badge / ID # | Incident Date | Incident Time |
|---|---|---|---|
| ABUYEN J | 62266/2861418 | 10OCT03 | 1607 |

| ☒ Continuation Report | ☐ Additional Information/ | ☐ Clarification Request |
|---|---|---|

Narrative: inmate Chandler's right upper biceps. I ordered inmate Chandler to stop resisting with negative results. Utilizing my body weight. Officer Pacheco and I forced inmate Chandler to a position on his hands and knees on the cell floor. Inmate Chandler took control of a baton on the cell floor in front of him. When inmate Chandler lifted the baton. Officer Machuca removed the baton from inmate Chandlers grasp. Inmate chandler then fell forward from the kneeling position on to his stomach and face. I ordered inmate Chandler to stop resisting with negative results. I then placed inmate Chandlers right wrist on the small of his back. Officer Machuca Reapplied the hand cuff on to inmate Chandlers left wrist Inmate Chandler was kicking and attempting to kick and spit on officer Pacheco, Machuca and I. Utilizing my right hand I directed inmate Chandlers face away from Officer Pacheco, Machuca and myself. I placed a spit mask on inmate Chandler. I ordered inmate Chandler to stop resisting with negative results. Sergeant Vasquez instructed Officer bock, Gonzalez, Rocha and I to escort inmate Chandler to D Facility Administrative Segregation unit walk alone yard one. I took control of inmate Chandlers right forearm and biceps and supported inmate Chandlers weight. Inmate Chandler began yelling," crip revolution, fucking crip revolution". Inmate Chandler was secured inside of walk alone yard one. Officer Machuca,Pacheco and I were instructed by Sergeant Vasquez to report to Correctional Treatment Center for medical evaluation. Officer Machuca, Pacheco and I were sent to Greenfield urgent care for blood exposure. Sergeant Vasquez offered me EPTP. I declined. This concludes my report.

| Reporting Staff's Signature | | | Date |
|---|---|---|---|
| J. Abuyen | | | 10OCT03 |

| Reviewer's Signature | Approved | Clarification Needed | Date |
|---|---|---|---|
| SGT S B. vasina | ☒ | ☐ | 10OCT03 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT

CDC 837 C-1 (1/99)

PAGE __1__ OF __5__

| NAME (LAST, FIRST, MI) | | BADGE NUMBER | INCIDENT DATE | | INCIDENT LOG NUMBER |
|---|---|---|---|---|---|
| Pacheco, J M | | 63726 | 10-10-03 | | SVP-FD2-C3-10-052 |
| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | | REPORT DATE | |
| 2 yr 4 months | D-2 Floor #1 | 1607 hrs | | 10-10-03 | |
| RDOs | DUTY HOURS | INCIDENT LOCATION | | | |
| S-m | 1400-2200 | D-2 A-Pod Cell 101 | | | |

| DESCRIPTION OF INCIDENT / CRIME | CCR SECTION / RULE |
|---|---|
| Battery on Peace officer | 3005 (c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACES-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☒ PRIMARY | (S) J. Abuyen | (S) Chandler (K-25679, D2-101L) |
| ☐ RESPONDER | (S) R. Machuca | |
| ☐ WITNESS | (S) Sgt. Vasquez | |
| ☐ VICTIM | (S) K. Bock | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | LESS THAN LETHAL WEAPONS | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| ☐ LETHAL | ☐ MINI-14 | | ☐ 37MM | ☐ LETHAL |
| ☐ LESS LETHAL | ☐ SHOTGUN | | ☐ BATON | ☐ LESS LETHAL |
| ☒ PHYSICAL | ☐ HANDGUN | | ☐ OC | ☒ PHYSICAL |
| ☐ NONE | ☐ OTHER N/A | N/A | ☐ OTHER N/A | ☐ NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIO HAZARD |
|---|---|---|---|---|
| ☐ YES | | | ☐ YES | ☒ YES |
| ☒ NO | N/A | N/A | ☒ NO | ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☒ YES | | Greenfield Urgent Care | ☒ YES | ☒ YES |
| ☐ NO | Brused left thumb | | ☐ NO | ☐ NO |

NARRATIVE:

On Friday October 10, 2003 at about 1607 hrs, while performing my duties as D-2 Floor #1 Officer J. Abuyen and I were escorting I/m Chandler (K-25679, D-2 101L) from D-2 A-section lower shower to cell 101. I was on the left side of I/m Chandler and had control of his left arm. We arrived to the front of cell 101. At this time the control officer opened the cell door. Officer Abuyen asked I/m Chandler what was under the lower bunk. I/m Chandler stated "what the fuck do you think". Officer Abuyen entered the cell and started to search under the lower bunk. Officer Abuyen found a blue state issued sheet tied together at all four corners. The sheet contained only state issued clothing. At this time, I/m Chandler stated "that's right

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| J Pacheco / c/o | 63726 281939 | 10-10-03 |

| REVIEWER'S SIGNATURE | APPROVED ☒ | CLARIFICATION NEEDED ☐ | DATE |
|---|---|---|---|
| SGT | | | 10/10/03 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C-2 - SUPPLEMENT**
CDC 837 C-2

PAGE 2 OF 3

INCIDENT LOG NUMBER

SUP-FOZ-03-10-0503

| NAME (LAST, FIRST, MI) | BADGE NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| PACHECO, J, M | 63726 | 10-10-03 | 1607 |

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT    ☐ ADDITIONAL INFORMATION    ☐ CLARIFICATION REQUEST

NARRATIVE

bitch, got you pigs scared you know what you got coming from the crips bitch." Officer Abuyen then exited the cell and instructed I/m Chandler to enter the cell. I/m Chandler stepped into the cell then turned around to his right and struck officer Abuyen with his left fist in the facial area. I immediately activated my personal alarm. Officer Abuyen struck I/m Chandler with his right and left fists in the head as I/m Chandler attempted to exit the cell. Next I entered the cell to assist officer Abuyen. I entered the cell on officer Abuyens right side, and took control of I/m Chandler's left arm as I/m Chandler was attempting to strike Officer Abuyen again. Officer Abuyen gained control of I/m Chandlers right arm. I/m Chandler kicked me on my right knee with his left foot. Following I/m Chandlers attempt to kick me again. I placed my left hand in front of his foot as he kicked, jaming my left thumb. Officer Abuyen and I then used physical force to place I/m Chandler on his hands and knees on the cell floor. I/m Chandler grabbed a baton with his left hand that was on the floor. Officer R. Machuca responded to call 101 and grabbed the baton as I/m Chandler raised the baton with his left hand. As Officer R Machuca pulled the baton away from I/m Chandler's

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # 2561939 | DATE |
|---|---|---|
| J. Pacheco | 63726 | 10-10-03 |

| REVIEWER'S SIGNATURE | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|
| SGT | ☒ | ☐ | 10/10/03 |

STATE OF CALIFORNIA                                                   DEPARTMENT OF CORRECTIONS
**CRIME / INCIDENT REPORT**
**PART C-2 - SUPPLEMENT**                                   PAGE __3__ OF __3__
CDC 837 C-2                                                  INCIDENT LOG NUMBER
                                                            _SUP-FD2-03-10-0503_

| NAME (LAST, FIRST, MI) | BADGE NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| _Pacheco  J. M_ | _63726_ | _10-10-03_ | _1607_ |
| TYPE OF INFORMATION | | | |

☒ CONTINUATION OF REPORT        ☐ ADDITIONAL INFORMATION        ☐ CLARIFICATION REQUEST

NARRATIVE:

_left hand, I/m Chandler fell toward onto his face and_
_chest. At this time I placed I/m Chandler's left forearm_
_to the small of his back. Officer R Machuca then reapplied_
_the mechanical wrist restraint to I/m Chandler's left wrist._
_When additional responding staff arrived, Officer K. Buck_
_placed Mechanical leg restraints on I/m Chandler. I exited_
_the cell to decontaminate myself from I/m Chandlers blood._
_I was instructed by Sgt Vazquez to report to CTC. Upon_
_arriving to CTC I was sent to Greenfield Urgent Care for_
_blood exposer. Upon my arrival to the institution. Sgt Vazquez_
_offered me EPTP and I declined. This concludes my report._

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | | BADGE / I.D. # _2861939_ | DATE |
|---|---|---|---|
| _J Pacheco C/O_ | | _63726_ | _10-10-03_ |
| REVIEWER'S SIGNATURE | APPROVED | CLARIFICATION NEEDED ☐ | DATE |
| _561_ | | | _10/10/03_ |

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

## CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT
CDC 837 C-1 (1/99)                                                         PAGE __1__ OF __2__

| NAME (LAST, FIRST, MI) | | BADGE NUMBER | INCIDENT DATE | INCIDENT LOG NUMBER |
|---|---|---|---|---|
| Machura, R. C. | | 66855 | 10-10-03 | SJP-FC2-C3-10-C503 |

| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | REPORT DATE |
|---|---|---|---|
| 10 mon4/15 | D-2 Floor #2 | 1607 | 10-10-03 |

| RDOs | DUTY HOURS | INCIDENT LOCATION |
|---|---|---|
| T/We | 1400 - 2200 | ASU D2 cell 101 cell front |

| DESCRIPTION OF INCIDENT / CRIME | CCR SECTION / RULE |
|---|---|
| Battery on Peace Officer Necessitating Staff U.O.F. - Physical | 3005 (c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| [X] PRIMARY | (S) J. Pacheco | (S) Chandler K-25679 |
| [X] RESPONDER | (S) J. Abuyen | |
| [ ] WITNESS | (S) K. Dock | |
| [ ] VICTIM | (S) Sgt. Vazquez | |
| [ ] CAMERA | | |

| FORCE USED BY YOU | LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | LESS THAN LETHAL WEAPONS | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| [ ] LETHAL | [ ] MINI-14 | | [ ] 37MM | [ ] LETHAL |
| [ ] LESS LETHAL | [ ] SHOTGUN | | [ ] BATON | [ ] LESS LETHAL |
| [X] PHYSICAL | [ ] HANDGUN | N/A | [ ] OC     N/A | [X] PHYSICAL |
| [ ] NONE | [ ] OTHER  N/A | | [ ] OTHER | [ ] NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIO HAZARD |
|---|---|---|---|---|
| [ ] YES | N/A | N/A | [ ] YES | [X] YES |
| [X] NO | | | [X] NO | [ ] NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF3301 / 3067 COMPLETED |
|---|---|---|---|---|
| [X] YES | SCRAPE to right elbow | Greenfield VACENT CARE | [X] YES | [X] YES |
| [ ] NO | | | [ ] NO | [ ] NO |

NARRATIVE:

On Friday 10-10-03 at approximately 1607 hours while performing my duties as D2 floor officer #2, I was conducting shower program on the upper tier A Pod when I responded to an audible alarm on the lower tier A Pod in front of cell 101 D2 soley occupied by inmate Chandler K-25679. At which time I observed Officer J. Pacheco and officer J. Abuyen attempting to gain control of inmate Chandler, who was resisting their attempts to place him in mechanical waist restraints. Chandler was positioned on his hands and knees when I observed him reach for and take control of the baton which had fallen on the floor in front of him. As Chandler raised the baton off the floor I gained control of the baton and pulled it away from Chandlers grasp. At which point officer Abuyen gained control of Chandlers right arm and officer Pacheco gained control of Chandlers left arm. I then re-applied

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| C/O R. Machura | 66855 / 2862446 | 10-10-03 |

| REVIEWER'S SIGNATURE | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|
| SGT   J BVq | [X] | [ ] | 10/10/03 |

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C-2 - SUPPLEMENT**
CDC 837 C-2

DEPARTMENT OF CORRECTIONS

PAGE 2 OF 2

INCIDENT LOG NUMBER

SUP-FQ2-03-10-0503

| NAME (LAST, FIRST, MI) | BADGE NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| Machuca, R. C. | 66855 | 10-10-03 | 1607 |

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT       ☐ ADDITIONAL INFORMATION       ☐ CLARIFICATION REQUEST

NARRATIVE

the mechanical wrist restraints on Chandlers left wrist. Once additional staff arrived officer K. Bock gained control of Chandlers feet and placed them in mechanical leg restraints. I thoroughly searched walk alone yard-cell #1, which provided negative results for placement of inmate Chandler. I was instructed by Sgt. Vazquez to report to C.T.C. for blood exposure and an abrasson on my right elbow. Upon arrival to C.T.C. I was sent to Green Field Urgent Care for further medical evaluation. Upon my arrival back to the institution Sgt. Vazquez offered me E.P.T.P. and I declined. this concludes my report.

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| C.O. R. Machuca | 66855 / 2862946 | 10-10-03 |
| REVIEWER'S SIGNATURE    SGT | APPROVED ☑ | CLARIFICATION NEEDED ☐ | DATE 10/10/03 |

STATE OF CALIFORNIA
## Crime/Incident Report
## PART C-1 - SUPPLEMENT
CDC 837 C-1

Page: 1 of 1

| Last Name, First Name Initial | | Badge / ID # | Incident Date | | Incident Log Number |
|---|---|---|---|---|---|
| Banuelos, M. | | 65782/2862674 | 10/10/03 | | SVP-FD2-03-10-0503 |
| Length of Service | Post Description | | Incident Time | | Report Date |
| 1YR. | D2 Control Booth Officer | | 1607 HRS. | | 10/10/03 |
| RDOs | Duty Hours | | Incident Location | | |
| M/T | 1400-2200 | | D2-101 | | |

| Description of Incident/Crime | CCR Section Rule |
|---|---|
| Battery on Peace Officer Necessitating Staff Use of Force | 3005 (c) |

| Your Role | Witnesses (preface S-Staff, V-Visitor, O-Other) | Inmates Involved (preface S-Suspect, S-Victim, W-Witness) |
|---|---|---|
| ☐ Primary | J. Abuyen   C/O | Chandler, K25679 |
| ☐ Responder | J. Pecheco C/O | |
| ☒ Witness | J. Vazquez Sgt. | |
| ☐ Victim | M. Banuelos C/O | |
| ☐ Camera | | |

| Force Used by You | Less Lethal Weapons | Lethal Weapons | Number of Rounds Fired | Force Observed by You |
|---|---|---|---|---|
| ☐ Lethal | ☐ 37mm | ☐ Mini-14 | | ☐ Lethal |
| ☐ Less Lethal | ☐ Baton   N/A | ☐ Shotgun N/A | N/A | ☐ Less Lethal |
| ☒ Physical | ☐ OC | ☐ Handgun | | ☐ Physical |
| ☒ None | ☐ Other: | ☐ Other | | ☒ None |

| Evidence Collected | Evidence Description | Disposition | Weapon | BIO Hazard |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☐ Yes |
| ☒ No | | | ☒ No | ☒ No |

| Reporting Staff Injured | Description of Injury | Located Treated | Bodily Fluid Exposure | SCIF 3301/3067 |
|---|---|---|---|---|
| ☐ Yes | N/A | N/A | ☐ Yes | ☐ Yes |
| ☒ No | | | ☒ No | ☒ No |

Narrative: On October 10, 2003, at approximately 1607 hours, while conducting my duties as D2 Control Booth Officer I observed Correctional Officers J. Pacheco and J. Abuyen escort Inmate Chandler (K-25679, D2-101L) from D2 "A" section lower shower to cell 101. Upon the Officers arriving to cell 101 I was instructed by C/O Abuyen to open cell 101. I opened the cell door while C/O Pacheco stood directly to  the left side of Inmate Chandler, with his right hand on Inmate Chandler's left forearm. At that time C/O Abuyen stepped into cell 101. C/O Abuyen stepped out of the cell and Inmate Chandler entered  the cell. As I attempted to close the cell door I saw C/O Abuyen's head jerk back. Due to the angle of the cell obstructing my view I lost sight of C/O Abuyen and Pacheco as their bodies moved forward into the cell. I activated my personal alarm. Responding staff arrived when I was instructed by Sergeant Vazquez to open the front door. I returned to "A" pod panel and observed responding staff escort Inmate Chandler to walk alone yard #1.  Sergeant Vazquez offered me Employee Post Trauma and I refused. This concludes my report.

| Reporting Staff's Signature | | | | Date |
|---|---|---|---|---|
| C/O M. Banuelos | | | | 10/10/03 |
| Reviewer's Signature | | Approved | Clarification Needed | Date |
| | | ☒ | ☐ | 10/10/03 |

STATE OF CALIFORNIA

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT
CDC 837 C-1 (1/99)

DEPARTMENT OF CORRECTIONS

PAGE _1_ OF _2_

| NAME, LAST, FIRST, MI) | BADGE NUMBER | INCIDENT DATE | INCIDENT LOG NUMBER |
|---|---|---|---|
| ROCHA X. | 65173 | 10/10/03 | SVP-FO2-03-10-0503 |

| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | REPORT DATE |
|---|---|---|---|
| 1 YR 7 MONTHS | 01F11 | 1607 | 10/10/03 |

| RDOs | DUTY HOURS | INCIDENT LOCATION |
|---|---|---|
| T/W | 1400-2200 | D2 CELL 101 |

| DESCRIPTION OF INCIDENT / CRIME | CCR SECTION / RULE |
|---|---|
| BATTERY ON PEACE OFFICER NECESSITATING STAFF U OF | 3005(c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACES-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | SGT VASQUEZ (S) LVN STARR (S) | I/M CHANDLER K-25679 (S) |
| ☒ RESPONDER | OF. BOCK (S) | |
| ☐ WITNESS | OF. MACHUCA (S) | |
| ☐ VICTIM | OF. GONZALES (S) | |
| ☐ CAMERA | OF. ABUYEN (S) | |

| FORCE USED BY YOU | LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | LESS THAN LETHAL WEAPONS | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| ☐ LETHAL | ☐ MINI-14 | | ☐ 37MM | ☐ LETHAL |
| ☐ LESS LETHAL | ☐ SHOTGUN | | ☐ BATON | ☐ LESS LETHAL |
| ☒ PHYSICAL | ☐ HANDGUN  N/A | N/A | ☐ OC   N/A | ☒ PHYSICAL |
| ☒ NONE | ☐ OTHER | | ☐ OTHER | ☐ NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIO HAZARD |
|---|---|---|---|---|
| ☐ YES  N/A  ☐ NO | N/A | N/A | ☐ YES N/A ☐ NO | ☐ YES N/A ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES  ☒ NO | N/A | N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

NARRATIVE:

ON FRIDAY, OCTOBER 10, 2003, AT APPROXIMATELY 1607 HOURS WHILE PERFORMING MY DUTIES AS DELTA 1 FLOOR OFFICER II. I RESPONDED TO AN AUDIBLE ALARM IN DELTA 2 A POD. UPON ARRIVING TO CELL 101 I OBSERVED INMATE CHANDLER K-25679 IN THE PRONE POSITION, RESISTING STAFF INSIDE HIS CELL. I IMMEDIATELY ASKED THE CONTROL OFFICER TO PASS DOWN THE MECHANICAL LEG RESTRAINTS TO/HUIS, I HANDED THE RESTRAINTS TO OFFICER BOCK, WHO THAN APPLIED THEM. AFTER, SGT VASQUEZ INSTRUCTED ME TO ASSIST WITH THE ESCORT TEAM TO CARRY CHANDLER TO WALKALONE YARD/CELL #1. I IMMEDIATELY MAINTAINED A FIRM GRASPED UNDER CHANDLER'S RIGHT CALF. OFFICER BOCK MAINTAINED CONTROL OF CHANDLER'S LEFT CALF, WHILE OFFICER(S) ABUYEN AND GONZALES TOOK CONTROL OF HIS ARMS. PRIOR TO PLACING

| NAME, TITLE, SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| ROCHA X. | 65173/2862439 | 10/10/03 |

| REVIEWER'S SIGNATURE | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|
| SGT A.J. Vasquez | ☒ | ☐ | 10/10/03 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C-2 - SUPPLEMENT**
CDC 837 C-2

PAGE 2 OF 2

INCIDENT LOG NUMBER
VPA-FD2-03-10-0503

| NAME (LAST, FIRST, MI) | BADGE NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| ROCHA N. | 65173 | 10/10/03 | 1607 |

TYPE OF INFORMATION

[X] CONTINUATION OF REPORT    [ ] ADDITIONAL INFORMATION    [ ] CLARIFICATION REQUEST

NARRATIVE:

CHANDLER IN The WALKALONE YARD/cell #1 Officer MACHUCA SEARCHED it Thoroughly with NEGATIVE results. Officer BOCK Then Applied The Retention RING, however, in The process CHANDLER STATED, "THIS IS A CRIP Revolution"!

AT 1630 LVN STARR performed A MEDICAL EVALUATION AND CLEARED him to Officer BOCK AND I with out further INCIDENT. Sgt. VASQUEZ offered ME EPTB, which I Declined.

| SIGNATURE OF REPORTING STAFF | BADGE, ID # | DATE |
|---|---|---|
| ROCHA N. | 65173/2862459 | 10/10/03 |
| REVIEWER'S SIGNATURE | APPROVED [X]   CLARIFICATION NEEDED [ ] | DATE 10/10/03 |

STATE OF CALIFORNIA  
DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT
CDC 837 C-1 (1/99)

PAGE 1 OF 2

| NAME (LAST, FIRST, MI) | | BADGE NUMBER | INCIDENT DATE | INCIDENT LOG NUMBER |
|---|---|---|---|---|
| Bock, K. I. | | 59571 | 10-10-03 | SVP-FD2-03-10-0503 |

| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | REPORT DATE |
|---|---|---|---|
| 4 yrs 6months | D-1 floor #2 | 1607 hrs | 10-10-03 |

| RDO's | DUTY HOURS | INCIDENT LOCATION |
|---|---|---|
| S/m | 1400/2200 | ASU D2 cell 101 cell front |

DESCRIPTION OF INCIDENT / CRIME

CCR SECTION/RULE: 3005(c)

Battery on Peace officer necessitating Staff UOF- Physical

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACES-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| PRIMARY | (S) Sgt V-Vsquez | (S) Chandler (K25679)(D-2-101L) |
| [X] RESPONDER | (S) C/o D Rocha | |
| WITNESS | (S) C/o H Gonzalez | |
| VICTIM | (S) C/o Muchose | |
| CAMERA | (S) LVN M Stees | |

| FORCE USED BY YOU | LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | LESS THAN LETHAL WEAPONS | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| LETHAL | MINI-14 | | 37MM | LETHAL |
| LESS LETHAL | SHOTGUN N/A | N/A | BATON N/A | LESS LETHAL |
| [X] PHYSICAL | HANDGUN | | OC | [X] PHYSICAL |
| NONE | OTHER | | OTHER | NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIOHAZARD |
|---|---|---|---|---|
| YES [ ] NO [X] | N/A | N/A | YES [ ] NO [X] | YES [ ] NO [X] |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF3301 / 3067 COMPLETED |
|---|---|---|---|---|
| YES [ ] NO [X] | N/A | N/A | YES [ ] NO [X] | YES [ ] NO [X] |

NARRATIVE:

On 10-10-03 approximately 1607 hrs, while performing my duties as D-1 floor #2, I responded to a audible alarm in D-2. I heard "stop resisting" in A pod and I responded to A pod cell 101. Upon arriving I/m Chandler (K25679)(D-2 101) was in the cell in the prone position resisting Staff. I firmly grabbed his left and right ankle to gain control of his lower extremities. I recieved leg restraints from C/o Rocha and applied the leg restraints on I/m Chandler. Sgt Vesquez instructed me to assist to carry I/m Chandler to the walk alone yard #1. I supported under I/m Chandler left calve and C/o Rocha supported under the right calve. C/o H. Gonzalez had

| NAME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| K Bock C/o | 59571 / 286 11 84 | 10-10-03 |

| REVIEWER'S SIGNATURE | APPROVED [X] | CLARIFICATION NEEDED [ ] | DATE 10/10/03 |
|---|---|---|---|
| SGT J RV | | | |

# EXHIBIT COVER PAGE



**EXHIBIT**

Description of this Exhibit: Memorandum From C.D.C.R
headquaters stateing that staff members need to
stop practicing the Code of Silence

Number of pages to this Exhibit: ___1___ pages.

JURISDICTION:   (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| ☑ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

State of California                                                    Youth and Adult Correctional Agency

# Memorandum

Date    :   February 17, 2004

To      :   All California Department of Corrections Employees


Subject:    ZERO TOLERANCE REGARDING THE "CODE OF SILENCE"


The California Department of Corrections (CDC) is only as strong as the values held by each of its employees, sworn and non-sworn.   How we conduct ourselves inside our institutions and in the Central Office is a reflection of those values.

The "Code of Silence" operates to conceal wrongdoing. One employee, operating alone, can foster a Code of Silence. The Code of Silence also arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those employees who report wrongdoing. Fostering the Code of Silence includes the failure to act when there is an ethical and professional obligation to do so.

Every time a correctional employee decides not to report wrongdoing, he or she harms our Department and each one of us by violating the public's trust. As members of law enforcement, all Correctional Officers must remain beyond reproach. The public's trust in this Department is also violated by retaliating against, ostracizing, or in anyway undermining those employees who report wrongdoing and/or cooperate during investigations. There is no excuse for fostering a Code of Silence.

Your hard fought efforts to protect the public deserve recognition. Recently, however, the public's trust has been undermined by the operation of a Code of Silence within the CDC. To correct this problem we are taking steps to ensure the Department exemplifies integrity and instills pride. Part of this effort is the immediate implementation of a zero tolerance policy concerning the Code of Silence. We will not tolerate any form of silence as it pertains to misconduct, unethical, or illegal behavior. We also will not tolerate any form of reprisal against employees who report misconduct or unethical behavior, including their stigmatization or isolation.

Each employee is responsible for reporting conduct that violates Department policy. Each supervisor and manager is responsible for creating an environment conducive to these goals. Supervisors are responsible for acquiring information and immediately conveying it to managers. Managers are responsible for taking all appropriate steps upon receipt of such information, including initiating investigations and promptly disciplining all employees who violate departmental policy.

Any employee, regardless of rank, sworn or non-sworn, who fails to report violations of policy or who acts in a manner that fosters the Code of Silence, shall be subject to discipline up to and including termination.


RICHARD RIMMER                              RODERICK Q. HICKMAN
Director (A)                                Agency Secretary
California Department of Corrections         Youth and Adult Correctional Agency

# EXHIBIT COVER PAGE

C

EXHIBIT

Description of this Exhibit: A letter from Plaintiff dated 12-24-07 to the Appeals Coordinators office at Salinas Valley In Re Plaintiff 602 Appeal

Number of pages to this Exhibit: ___1___ pages.

JURISDICTION:   (Check only one)

|  |  |
|---|---|
|  | Municipal Court |
|  | Superior Court |
|  | Applellate Court |
|  | State Supreme Court |
| ✓ | United States District Court |
|  | State Circuit Court |
|  | United States Supreme Court |
|  | Grand Jury |

12-24-07

Dear SVSP Appeals Coordinator
This is inmate CANDLER# K25679 Writing
your office in regards of A 602 Appeal-
Complaint that I wrote approximately
five (5) weeks Ago. The complaint was against
A SGT Vasquez c/o ROCHA, c/o Gonzalez
and LVN. M STARR for them Misusing
the Rentent“on Ring Device on me on
10-10-03 which is also related to STAFF
COMPlaint - D-03-03580 and a Court Order that
I recieved on 11-3-07. Per title 15 your office
was suppose to have responded back to me.
A couple weeks ago. Could you please write
me back and let me know the stAtus on
the appeal or anything else you would like
me to know regarding this issue.
                         Thank you very much.

                              Keith Candler

# EXHIBIT COVER PAGE

<div style="border: 1px solid black; display: inline-block;">

H

</div>

**EXHIBIT**

Description of this Exhibit: Five extractions from SVSP of 29B IN RE the Retention Ring Device

Number of pages to this Exhibit: ___5___ pages.

JURISDICTION:  (Check only one)

| | |
|---|---|
| ☐ | Municipal Court |
| ☐ | Superior Court |
| ☐ | Applellate Court |
| ☐ | State Supreme Court |
| ☑ | United States District Court |
| ☐ | State Circuit Court |
| ☐ | United States Supreme Court |
| ☐ | Grand Jury |

|  | **California**<br>**Department of Corrections**<br>**Salinas Valley State Prison**<br>**OPERATIONAL**<br>**PROCEDURE**<br>**29 B** | **TITLE:**<br>**Detached 100 Cell ASU** |
|---|---|---|
| | | **DEVELOPED:**<br>**March 2003** |
| | | **REVISED:**<br>**October 2004** |

**Daily Review Of MCS**

Inmates on MCS will be interviewed daily by the Second Watch, ASU Lieutenant, or his designee, in order to monitor the inmate's condition and behavior. The ASU Lieutenant, or his designee, will document this interview in the inmate's CDC 114A file.

**ICC Review of MCS**

ICC will review inmates placed on MCS during normal classification, the review will be noted in the CDC 128G.

**29B.5.25.1.8**
**REMOVAL FROM MCS**

The AW-BS will retain authority to remove inmates from MCS via a CDC 128B, routing the chrono as above.

Inmates will not remain on MCS for more than ten (10) consecutive days for each MCS placement.

**29B.5.25.1.9**
**RETENTION**
**RING/TRIANGLE**
**PRECAUTION**

The retention ring/triangle is a device designed to prevent an inmate from refusing to surrender his handcuffs.

Retention ring precaution/triangle is normally imposed when an inmate has displayed a history of refusing to surrender his handcuffs.

Escorting staff that have reason to believe that an inmate will be disruptive or assaultive while being removed from a cell (intoxicated, emotionally upset, unruly, etc.) will request authorization from the on-duty supervisor to implement retention ring precautions prior to removing the inmate from the cell. The precaution will remain in effect for 24 hours and will be documented on a CDC 128-B.

Following a cell extraction, the retention ring/triangle precaution may be imposed with supervisor approval. Retention ring/triangle precaution may be imposed for a maximum period of 10 days. An additional period of 10 days may be imposed at the expiration of the first period pending ICC review.

ICC may impose the retention ring/triangle precaution for a period of 30 days and may elect to extend the period in 30-day increments as deemed necessary.

Removing an inmate from a cell, shower, or holding cell utilizing the retention ring will be as follows.

♦ The retention ring/triangle is used by securing the padlock to the chain attached to the retention ring and onto the chain separating a pair of handcuffs.

♦ While standing in front of the food/cuff port, the primary escort officer holding the retention ring/triangle will instruct the inmate to back up and



| California Department of Corrections Salinas Valley State Prison OPERATIONAL PROCEDURE 29 B | TITLE: Detached 100 Cell ASU |
| --- | --- |
| | DEVELOPED: March 2003 |
| | REVISED: October 2004 |

place his hands through the food/cuff port. The handcuffs will be applied, and double-locked, securing the inmate's wrists.

♦ The cell door will be opened and the inmate will be instructed to back out of the cell and the cover officer will physically control the inmate by grasping his left hand and forearm. The inmate will be instructed to stand to the side of the cell door and the cell door will be closed. The primary officer will remove the padlock from the handcuff chain. **The retention ring will not be attached to any inmate during escort.**

Placing an inmate into a cell, shower or holding cell utilizing the retention ring/triangle will be as follows:

♦ Upon arriving at the destination, the inmate will be instructed to face the wall to the side of the doorway and the cover officer will physically control the inmate in the manner as described above.

♦ The primary officer will attach the padlock and chain to the handcuff chain and upon opening the food/cuff port; the cell door will be opened.

♦ The inmate will be instructed to enter the cell and the primary officer will back up to a distance as to allow very little slack in the chain. The cell door will be ordered closed and the inmate will be instructed to extend his hands through the food/cuff port. The cover officer will remove the handcuffs while the primary escort officer maintains control of the retention ring/triangle at distance away from the cell as to allow no slack. The padlock will not be removed from the handcuff chain until away from the cell.



| | California<br>**Department of Corrections**<br>**Salinas Valley State Prison**<br>**OPERATIONAL**<br>**PROCEDURE**<br>**29 B** | **TITLE:**<br>**Detached 100 Cell ASU** |
|---|---|---|
| | | **DEVELOPED:**<br>**March 2003** |
| | | **REVISED:**<br>**October 2004** |

**29B.5.25.1.10**
**LEG IRON SECURITY**
**PRECAUTION**

Inmates placed on leg iron status must have their ankles secured in leg irons any time they are escorted within or from the Housing Unit for any reason. These inmates may not be placed on a lead chain with other inmates who are not on leg iron status.

Leg iron status is imposed whenever there is a reasonable risk the inmate will attempt to kick either staff or other inmates, may try to run during escort, the inmate is threatening or angry or there is a possible security problem that can be limited with the use of leg irons.

With supervisor approval, leg iron status may be imposed for a maximum period of 10 days. Additional periods may be imposed at the expiration of each period.

The AW-BS may impose this security precaution for a period of 30 days or less. The AW-BSmay extend this restriction of 30 days at a time, if there is reason to believe the inmate remains a threat.

**29B.5.25.1.11**
**SPIT NET SECURITY**
**PRECAUTION**

Inmates will be placed on Spit Net Security Precaution in accordance with Operational Procedure#14 Use of Force (Confidential Operational Procedure).

**29B.5.25.1.12**
**CONTAINER**
**RESTRICTION**

Inmates placed on container restriction-food/cuff port restriction will not be allowed containers of any kind inclusive of canteen cups and milk cartons (inmates will be given a milk substitute such as sliced cheese). Inmates placed on this restriction will be fed utilizing the safety feeding device.

Container restriction is imposed whenever an inmate threatens to throw, attempts to throw, or throws liquids on staff or other inmates.

With Captain approval, container restriction may be imposed for a maximum period of 10 days. An additional period of 10 days may be imposed at the expiration of the first period.

The Associate Warden may impose this restriction for a period of longer than 10 days.

**29B.5.25.1.13**
**PAPER TRAY STATUS**

Inmates placed on paper tray-food/cuff port restriction status will be fed on paper trays. The inmates on this status will be fed utilizing the safety feeding device.

Paper tray status is imposed whenever an inmate refused to return his food tray, used the tray to commit a disciplinary offense or attempts to break or deface the food tray.

If the offense also involves misuse or damage to the food/cuff port, the food



| | California | TITLE: |
|---|---|---|
| | Department of Corrections | Detached 100 Cell ASU |
| | Salinas Valley State Prison | **DEVELOPED:** |
| | OPERATIONAL | **March 2003** |
| | PROCEDURE | **REVISED:** |
| | **29 B** | **October 2004** |

**29B.5.27**
**VISITS**

Visiting will be permitted with persons approved in accordance with the regulations set forth in the Rules and Regulations of the Director of Corrections and Operational Procedure #5-Visiting.

The Administrative Segregation Unit inmates are permitted visits with their approved visitors.

***ALL VISITS WILL BE NON-CONTACT, <u>including attorney visitation and consultation as designated in the Rules and Regulations of the Director of Corrections, Section 3175.</u>***

All visits will be by appointment only. Visiting periods with approved visitors will be for one hour on Saturdays, Sundays, and designated holidays in the Facility B Visiting Room. Inmates will be transported to the B Visiting Room via the inter-facility transport vehicle through the back entrance into Complex I.

**29B.5.28**
**SHOWERS**

Inmates housed within Administrative Segregation Unit will be afforded the opportunity to shower three times per week. A maximum of ten minutes is authorized for each shower. Inmates will normally be showered within the unit during the hours of 1100 - 2030, Third Watch.

When being escorted to showers, the inmate will be attired only in undershorts, a T-shirt and soft sole shoes or thongs.

Inmates are authorized to take the following items in the shower:

- Half bar of soap
- Shampoo
- One towel

DPP inmates will be afforded the same opportunity to shower as non-DPP inmates. Shower chairs will be provided for mobility-impaired inmates.

Staff will encourage Administrative Segregation Unit inmates to maintain acceptable personal hygiene standards. An inmate's failure to maintain himself or his assigned cell in an acceptable manner will be reported to the Administrative Segregation Unit Sergeant.

**29B.5.29**
**ACCESS BY SALINAS**
**VALLEY STATE**
**PRISON STAFF**

To gain access to Administrative Segregation Unit, everyone must contact the Administrative Segregation Sergeant. Upon arriving to ASU, staff must knock on the locked center entrance door and stand by for assistance. Upon entering, each person must sign in on the Segregation Isolation Log. After signing in, visitors will be issued a protective vest and face shield (excluding management staff) by appropriate staff. All persons entering shall notify the Administrative Segregation Unit Sergeant of their presence (this includes Salinas Valley State Prison staff, such as custody, medical, or



| California | TITLE: |
| Department of Corrections | Detached 100 Cell ASU |
| Salinas Valley State Prison | DEVELOPED: |
| OPERATIONAL | March 2003 |
| PROCEDURE | REVISED: |
| 29 B | October 2004 |

maintenance).

All visiting staff will be escorted by at least one assigned ASU staff member. Regardless of the purpose of the visit, no one will be allowed access to the housing unit areas without a proper escort.

It is not necessary for those assigned to the Administrative Segregation Unit to notify the unit prior to their arrival. They do however need to sign in on the Segregation Isolation Log upon entry.

It is imperative that the Sergeant be aware of who is in Administrative Segregation Unit at all times for security reasons. It is the responsibility of the Administrative Segregation Unit Sergeant to ensure that all SVSP staff members entering the Administrative Segregation Unit are trained in security methods that apply to their purpose for visiting Administrative Segregation Unit. The following are issues of concern to be addressed by the Administrative Segregation Unit Sergeant relative to such visits:

♦ Application of restraints.
♦ Escorting or transporting of Administrative Segregation Unit inmates.
♦ Staff personal safety when food ports are opened.
♦ Issuance and/or signing of documents. (It is imperative that all staples, paper clips, and carbon paper be removed prior to being issued to an inmate.)
♦ Pens and pencils are **not** to be retained by inmates after signing of documents has been completed.
♦ With the exception of authorized paperwork, reading material, or medication, no item is to be passed to an Administrative Segregation Unit inmate by other than Administrative Segregation Unit staff.

All staff assigned to ASU will wear a stab proof protective vest. Protective vests will be issued to staff members assigned to Administrative Segregation Units who are pending receipt of their own personally assigned vest. The Armory staff will issue one set of protective vest plates and two vest covers to these staff. A signed issuance form will be completed and filed in the Armory. Staff is responsible for the vest covers and plates for which they have signed and with the exception of normal wear, they will be held accountable for equipment loss or damage. When staff members are no longer assigned to ASU, or they are transferring to another institution, the vest equipment must be returned to the Armory.

**29B.5.30**
**PROTECTIVE VESTS**

**Visitor Vests**

The staff members not assigned to ASU will utilize visitor vests when working in ASU, or conducting business in ASU. In order to obtain a vest, staff members will be required to present a state issued chit. Upon completion of the shift, the vest cover and plates will be returned. All vest covers and plates will be inventoried after every shift.

# EXHIBIT COVER PAGE

```
┌──────────────┐
│      工       │
│              │
└──────────────┘
```
EXHIBIT

Description of this Exhibit: Defendant M. STARR 7219
Medical document Completed on Plaintiff during
the incident at matter
Number of pages to this Exhibit: ____1____ pages.

JURISDICTION:    (Check only one)

☐ Municipal Court

☐ Superior Court

☐ Appellate Court

☐ State Supreme Court

☐ United States District Court

☐ State Circuit Court

☐ United States Supreme Court

☐ Grand Jury

**EDICAL REPORT OF INJURY**
**L UNUSUAL OCCURRENCE**

| AME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| SCSP | D-2 | USE OF FORCE / INJURY / UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 10/10/03 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST Chandler | FIRST | CDC NUMBER K-75_7 | HOUSING LOC. 101 | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|

| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|---|

| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|---|
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE D-2 A RM 101 | DATE/TIME OF OCCURRENCE 10/10 | NAME OF WITNESS(ES) PACHECC, mPRINSER |
|---|---|---|

| TIME NOTIFIED 16 20 | TIME SEEN 16 30 | ESCORTED BY CUSTODY | MODE OF ARRIVAL *(circle)* (AMBULATORY) LITTER WHEELCHAIR ON SITE | AGE 26 | RACE Bl | SEX m |
|---|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"Three c/o's jumped me, set me cp."



| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

O.C. SPRAY EXPOSURE?     YES / NO

DECONTAMINATED?     YES / NO

Self-decontamination instructions given?     YES / NO

Refused decontamination?     YES / NO

Q 15 min. checks

Staff issued exposure packet? YES / NO

| RN NOTIFIED/TIME 1745  P. | PHYSICIAN NOTIFIED/TIME |
|---|---|

TIME/DISPOSITION

| | REPORT COMPLETED BY/TITLE     (PRINT AND SIGN)  14, STARR  LVN | BADGE # | RDOs |
|---|---|---|---|

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

**CDC 7219 (Rev. 11/02)**     DISTRIBUTION:   ORIGINAL - UHR     CANARY - CUSTODY     PINK - HEALTH AND SAFETY/RTW COORDINATOR

# EXHIBIT COVER PAGE



**EXHIBIT**

Description of this Exhibit: ~~the~~ The 7219 medical document
Completed on Plaintiff by different medical
staff at CTC Which shows Plaintiff lip and wrist
Number of pages to this Exhibit: ____1____ pages.      Injuries

JURISDICTION:  (Check only one)

☐  Municipal Court

☐  Superior Court

☐  Applellate Court

☐  State Supreme Court

☐  United States District Court

☐  State Circuit Court

☐  United States Supreme Court

☐  Grand Jury

E OF CALIFORNIA                                                                          DEPARTMENT OF CORRECTIONS

**DICAL REPORT OF INJURY**
**UNUSUAL OCCURRENCE**

| ME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | ON THE JOB INJURY | DATE |
|---|---|---|---|---|
| SUSP | CTC ER | (INJURY) USE OF FORCE    UNUSUAL OCCURRENCE | PRE AD/SEG ADMISSION | 10/10/03 |

| HIS SECTION FOR IMATE ONLY | NAME | LAST CHANdLer | FIRST Keith | CDC NUMBER K25679 | HOUSING LOC. D3-218 | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| HIS SECTION FOR TAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) | | | |
|---|---|---|---|---|---|
| D2 Afod 101 | 1615 | Custody Staff | | | |
| TIME NOTIFIED 2000 | TIME SEEN 2020 | ESCORTED BY Custody | MODE OF ARRIVAL *(circle)* (AMBULATORY) LITTER  WHEELCHAIR  ON SITE | AGE 26 | RACE BLK | SEX Mal. |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"I was set up by CO's



| JURIES FOUND? (YES)/NO | |
|---|---|
| brasion/Scratch | 1 |
| ctive Bleeding | 2 |
| oken Bone | 3 |
| uise/Discolored Area | 4 |
| rn | 5 |
| locaton | 6 |
| ed Blood | 7 |
| sh Tattoo | 8 |
| Laceration/Slash | 9 |
| Spray Area | 10 |
| | 11 |
| usion | 12 |
| ture | 13 |
| ened Area | 14 |
| Flap | 15 |
| len Area | 16 |
| | 17 |
| | 18 |
| | 19 |

RAY EXPOSURE? YES / NO

ITAMINATED? YES / NO

contamination ons given? YES / NO

decontamination? YES / NO

checks

ed exposure packet? YES / NO

| IFIED/TIME WR~~~~ | PHYSICIAN NOTIFIED/TIME 2030 |
|---|---|
| SPOSITION RTX p̄ Suture To Lip | |

| REPORT COMPLETED BY/TITLE  (PRINT AND SIGN) WR Smith  WR Smith | BADGE # | RDOs |
|---|---|---|

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit: 602 Appeal and attached exhibits Filed by Plaintiff after the Courts Order on 11-1-07

Number of pages to this Exhibit: _____9_____ pages.

JURISDICTION:    (Check only one)

|  |  |
|---|---|
|  | Municipal Court |
|  | Superior Court |
|  | Appellate Court |
|  | State Supreme Court |
| ✓ | United States District Court |
|  | State Circuit Court |
|  | United States Supreme Court |
|  | Grand Jury |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



March 13, 2008

CHANDLER, KEITH, K25679
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

RE: IAB# 0720555      LEGAL

Mr. CHANDLER:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal was rejected, withdrawn or cancelled. If you disagree with that decision, contact the Appeals Coordinator. You must comply with instructions from that office.

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

## INMATE / PAROLEE APPEAL SCREENING FORM

INMATE: _____ **C Andler** _____ CDC #: **K25679** _____ CDC HOUSING: **C 1-205**    CDCR-695

THIS IS *NOT* AN APPEAL RESPONSE – THIS APPEAL IS EITHER REJECTED FOR REASONS NOTED BELOW OR

RETURNED TO MORE INFORMATION OR FOR YOU TO ATTACH SUPPORTING DOCUMENTS.

PLEASE FOLLOW INSTRUCTIONS AND RETURN YOUR CDC 602 WITHIN 15 WORKING DAYS

[ ] Requested Action Already Taken

[X] Duplicate Appeal; Same Issue **03 - 3580**

[ ] Appealing Action Not Yet Taken

[ ] Incomplete Appeal – Documents Not Attached

[X] Time Constraints Not Met

[ ] Cannot Submit On Behalf Of another Inmate

[ ] Appeal Process Abuse – Inappropriate Statements

[ ] No Significant Adverse Effect Demonstrated

[ ] Action / Decision Not Taken By CDCR

[ ] Action Sought Is Under Sentencing Court Jurisdiction

[ ] Submit Issue to Assigned Parole Office

[ ] Appeal Matter to VCGCB

[ ] DRB Decisions Are Not Appealable

[ ] Request for Interview; Not an Appeal

[ ] More than one issue –one issue per appeal

[ ] NO ATTEMPT AT INFORMAL RESOLVE

[ ] Requested Appeal Withdrawn

[ ] Appeal Previously Received and Processed

[ ] Incomplete 602 – Complete Next Appropriate Section

[ ] Incomplete 602 – Sign and Date Appropriate Section

[ ] Limit of One Continuation Page May Be Attached

[ ] Incomplete Disciplinary Appeal – Missing Documents*

[ ] Incomplete Property Appeal – Missing Documents*

[ ] Failed to Provide Necessary Copies of Chrono(s)*

[ ] Appeal Process Abuse – Pointless Verbiage

[ ] May Submit One (1) Non-Emergency Appeal Per Week

[ ] Attempting to Change Original Appeal Issue

[ ] Not Authorized to Bypass Any Level

[ ] Appeal Issue & Reasonable Accommodation Not 1824

[ ] Do Not Combine Staff Complaints with Other Issues

[ ] Emergency Not Warranted-CCR 3084.7

[ ] **Not a Request Form; Use CDCR-7362 – to access Medical Services, submit your request on a CDCR-Form 7362, Health**

Care Services Form, and send it to the Medical Department for an appointment. *If necessary, sign up for sick call.*

### PLEASE ATTACH AS NOTED BELOW:

[ ]    CDC 115/Hearing Officer's Results

[ ]    CDC 115 with IE/DA information

[ ]    Supplemental Reports to CDC 115

[ ]    CDC 1030 Confidential Disclosure

[ ]    CDC 114D Lookup Order

[ ]    CDC 128G ICC/UCC

[ ]    CDC 128G CSR Endorsement Chrono

[ ]    CDC 839/840 Class/Reclass Score Sheet

[ ]    CDC 7219 Medical Report

[ ]    **Other: SEE COMMENTS BELOW**

[ ]    CDC 128C Medical Chrono

[ ]    CDC 1819 Denied Publications

[ ]    CDC 128-A

[ ]    CDC 128 B

[ ]    CDC 143 Property Transfer Receipt

[ ]    Cell Search Slip    **RET'D NOV 1 8 2007**

[ ]    Receipts

[ ]    Qtr. Pkg. Inventory Slip

[ ]    Trust Account Statement

[ ]    Property Inventory Receipt

Comments: You may write on back of this form to clarify or respond to the above.

This appeal is rejected as late and as a duplicate

**REC'D NOV 1 8 2007**

T. Variz, Correctional Counselor-II
Appeals Coordinator
Salinas Valley State Prison

Date: **11-14-07**

This screening action may not be appealed. If you allege the above reason is inaccurate, then attach an explanation on
a separate piece of paper, or use the back of this screen out – *do not write any more on the appeal itself.*
Please return this form to the Appeals Coordinator with the necessary information attached.

PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category    **10**

1. _____   1. _____

2. _____   2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of action taken. No reprisals will be taken for using the appeals procedure responsibly.    *Processing Appeals – 03-3580*

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| K. Candler | K25679 | | C-1-205 |

A. Describe Problem: Appellant is writing this appeal in Connection to A United States District Court Order, telling appellant to exhaust my administrative remedies before filing A USC 1983 Civil Right Claim against Sgt J Vasquez, guard D. Rocha and guard H. Gonzalez. This appeal is also in connection to Appeal log # SVSP-D-03-03580 This appeal is a misconduct Complaint against the above mentioned officials. LVN Starr, M. is also —

If you need more space, attach one additional sheet.

B. Action Requested: Im Requesting that Sgt J Vasquez, C/o D. Rocha, C/o H. Gonzalez and LVN M. Starr be thoroughly investigated for their misconduct

RECEIVED NOV 14 2007

Inmate/Parolee Signature: *Keith Candler*    Date Submitted: **11-8-07**

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

REC'D NOV 18 2007

RET'D NOV 18 2007

DUPLICATE

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                    Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____
☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

*Plaintiff is requesting third level Review because 2nd level Review*
*Refused to give a descision in the matter. I explained to the*
*Appeals Coordinator the hole situation Concerning the matter.*
*Now I'm requesting your descision in the Matter or can you*
*have SVSP appeals Coordinator give their descision*

Signature: *Keith Caroller* _____ Date Submitted: *1-13-08*

For the Director's Review, submit all documents to: Director of Corrections
                                       P.O. Box 942883
                                       Sacramento, CA 94283-0001
                                       Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)


0720555

involved in this complaint which describe violations of the 8th Amendment right to be free from crule and unusual punishment and the right to recieve adequate medical treatment for serious injurys.

On 10-10-03 correctional officers pacheco, Machuca and Abuyen escorted me back to my cell from the shower. After I entered the cell, Tower officer M Banuelos did not close the cell door. Abuyen followed plaintiff into my cell and punched me in the head and face with his fist while pacheco and Machuca watched from just out side the cell, when I began trying to defend myself, pacheco and Machuca rushed in and began hitting me in the face and head untill I fell to the ground. Abuyen sat on my lower back while pacheco and machuca kept punching me in the face. I was then hand cuffed at which point Banuelos sat off her alarm. Abuyen resumed punching me in the face, splitting my lip after whitch he scraped plaintiff forehead along the cell floor. I was bleeding and a spit net was placed over my head, preventing me from breathing propler ly and I was placed in leg irons extra tightly.

I was next taken to an out side holding cell, where I was forced to wear the Retention Ring device. Sgt Vasquez, C/o Rocha and C/o Gonzalez were present while I was secured to the out side cell by the Retention Ring, I complained to the —

three officials that the hand cuffs were too tight but they refused to loosen them. I there after went in and out of consciousness for two hours. After I awoke LVN M. STARR came to the holding cell and minimized the injuries on the 7219 and refused to tell the officials to take off or loosen any of the restraint devices that I was wearing.

Nurse M. STARR have a history of helping corrupted guards cover up abuses on inmates. Vasquez, Gonzalez Rocha and STARR did not provide me with any treatment during the approximately 5 (five) hours I was in the holding /cell.

After that time I was taken to the office of LT Ortiz, where I related my version of the incident on videotape and also wrote it down. I was then escorted to CTC where I recieved only stitches in my lip.

the other reason I did not mention Vasquez, Gonzalez, Rocha and STARR in Appeal log # SVSP-D-03-03580 was because I didn't know at the time that it is case authority that prohibited them from useing restraint devices for torturing purposes. The incidents described in this complaint happend in D-2 Ad sec Also attached to this appeal is a Administrative investigation document, two civil litigation documents and c/o Rocha incident report, all related to this complaint.

# SALINAS VALLEY STATE PRISON

## STAFF COMPLAINT — INMATE APPEAL

Appeal Log Number:

Attachment to 03-3788

SVSP-D-03-0358()

Inmate Name:

K25679 Candler

Area:

AD/SEG

Staff Name:

MANDA C/O Hauyen, Machuca, & Pacheco

Coordinator
Recommendation:

Supervisory — Fact Finding

(Comments)

---

### INVESTIGATION    ASSIGNMENT

☑ Supervisory — Fact Finding

Reject ☐ and ☐ Supervisory — Fact Finding

Category 1 ☐ Investigative Services Unit

Category 2 ☐ Office of Internal Affairs

Edward J. Caden
Chief Deputy Warden

11/6/03
Date

1 | with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure as mandated by *Heck*
2 | *v. Humphrey*, 512 U.S. 477, 487 (1994), and its progeny.

3 |     Plaintiff filed an Opposition to Defendants' Motion to Dismiss (Opposition) on February 2,
4 | 2006. In an Order filed August 23, 2006, the Court granted Plaintiff an additional 21 days to file
5 | any supplemental opposition and additional evidence. Plaintiff advised the Court, in
6 | correspondence filed October 3, 2006, that he would file neither supplemental opposition nor
7 | further evidence in the matter.

8 |     This reply brief focuses on Plaintiff's failure to properly exhaust administrative remedies, as
9 | Plaintiff's Opposition fails to address Defendants' request for dismissal as to claims against
10 | Defendants Pacheco, Machuca, Abuyen, and Banuelos under Rule 12(b)(6) of the Federal Rules
11 | of Civil Procedure as mandated by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), and its
12 | progeny.

13 | <center>**Argument**</center>

14 | **PLAINTIFF'S ACTION MUST BE DISMISSED BASED ON THE**
   | **NONENUMERATED PORTION OF RULE 12(b) OF THE FEDERAL**
15 | **RULES OF CIVIL PROCEDURE BECAUSE PLAINTIFF FAILED**
   | **TO EXHAUST HIS AVAILABLE REMEDIES BEFORE FILING**
16 | **THIS ACTION.**

17 |     This action must be dismissed without prejudice because Plaintiff failed to exhaust his
18 | administrative remedies for the claims in his Amended Complaint as required by 42 U.S.C. §
19 | 1997e(a).

20 | **A.   Proper Exhaustion is Required Before Filing Suit in Federal Court.**

21 |     Since Defendants filed their Motion to Dismiss, the U.S. Supreme Court clarified the nature
22 | of exhaustion required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), in
23 | *Woodford v. Ngo,* 126 S. Ct. 2378, 2382 (2006): *proper* exhaustion of an inmate's administrative
24 | remedies is necessary. Procedurally defective administrative grievances will not satisfy the
25 | exhaustion requirement. *Id.* Additionally, as the Ninth Circuit held in June 2006, "the PLRA
26 | requires that a prisoner exhaust administrative remedies *before* submitting any papers to the
27 | federal courts." *Vaden v. Summerhill*, 449 F.3d 1047, 1048 (2006) (emphasis added). Thus,
28 | even if the Court finds Plaintiff properly exhausted his administrative remedies after filing his

Defs.' Reply re: Mot. to Dismiss                 *Candler v. Woodford, et al.*
                                                    Case No. C 04-5453 MMC (PR)

1  Complaint, the action must still be dismissed without prejudice.

2  **B.    Plaintiff Failed to Properly Administratively Exhaust His Claims Before Filing This Action.**

3

4  Plaintiff's Declaration in support of his Opposition details Plaintiff's alleged attempts to

5  exhaust his grievances; but Plaintiff simultaneously details a failure to properly exhaust his

6  grievance. An inmate cannot arbitrarily mail grievances to the Director's Level, but must do so

7  in accordance with the procedures mandated by California's grievance system. *Ngo*, 126 S. Ct. at

8  2382. No grievance concerning the incident in Plaintiff's Complaint, which includes Appeal

9  Nos. 03-03580 and 03-03788, ever completed the Director's Level review. (Decl. N. Grannis,

10 Ex. A.)

11 Plaintiff's contention that he was confused as to whether a partially granted Second Level

12 Review needs to be appealed to the third level (*see* Decl. of Plaintiff supporting Plaintiff's

13 Opposition) rings hollow, given that Plaintiff properly exhausted Appeal No. 04-00032 after

14 receiving just such a partially granted Second Level Review (*see* Decl. N. Grannis, Ex. B).

15 Plaintiff's action must be dismissed without prejudice for failure to exhaust administrative

16 remedies. *See* 42 U.S.C. § 1997e(a).[1]

17  <u>**CONCLUSION**</u>

18 This action must be dismissed without prejudice because Plaintiff failed to properly exhaust

19 his administrative remedies before filing suit. Further, Plaintiff does not oppose Defendants'

20 argument that Plaintiff's claims against Defendants Abuyen, Pacheco, Machuca, and Banuelos

21 should be dismissed under the *Heck* rule, because Plaintiff was found guilty of battery on a peace

22 officer and he cannot now maintain a § 1983 action against the correctional officer he resisted

23 and battered. If Plaintiff were to be successful in his civil rights action, his success would

24

25 1. Defendants preserve the argument that even if the Court finds that Plaintiff exhausted one of his claims, the entire action should still be dismissed without prejudice. Although overturned in

26 *Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005), the Supreme Court granted certiorari on March 6, 2006, on the issue of whether an action should be dismissed in its entirety without prejudice if there

27 are both exhausted and unexhausted claims in the action, in two consolidated cases: *Williams v. Overton*, 126 S. Ct. 1463 (U.S. Mar. 6, 2006) (No. 05-7142); *Jones v. Bock*, 126 S. Ct. 1462 (U.S.

28 Mar. 6, 2006) (No. 05-7058). Oral argument is set for October 30, 2006, in these two cases.

Defs.' Reply re: Mot. to Dismiss                           *Candler v. Woodford, et al.*
                                                            Case No. C 04-5453 MMC (PR)

3

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C-1 - SUPPLEMENT
CDC 837 C-1 (1/99)

PAGE __1__ OF __2__

| NAME (LAST, FIRST, MI) | | BADGE NUMBER | INCIDENT DATE | INCIDENT LOG NUMBER |
|---|---|---|---|---|
| Kocha D. | | 65173 | 10/10/03 | SVP-F02-03-10-0503 |
| LENGTH OF SERVICE | POST DESCRIPTION | INCIDENT TIME | | REPORT DATE |
| 1 YR 7 MONTHS | D1 F11 | 1607 | | 10/10/03 |
| RDOs | DUTY HOURS | INCIDENT LOCATION | | |
| T/W | 1400-2200 | D2 CELL 101 | | |

| DESCRIPTION OF INCIDENT / CRIME | | CCR SECTION / RULE |
|---|---|---|
| Battery on Peace Officer Necessitating staff VOF | | 3005(c) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACES-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | SGT VASQUEZ (S) LVN STARR (S) | I/M CHANDLER K-25679 (S) |
| ☒ RESPONDER | Of. Bock (S) | |
| ☐ WITNESS | Of. Machuca (S) | |
| ☐ VICTIM | Of. Gonzales (S) | |
| ☐ CAMERA | Of. Abuyen (S) | |

| FORCE USED BY YOU | LETHAL WEAPONS | NUMBER OF ROUNDS FIRED | LESS THAN LETHAL WEAPONS | FORCE OBSERVED BY YOU |
|---|---|---|---|---|
| ☐ LETHAL | ☐ MINI - 14 | | ☐ 37MM | ☐ LETHAL |
| ☐ LESS LETHAL | ☐ SHOTGUN | | ☐ BATON | ☐ LESS LETHAL |
| ☒ PHYSICAL | ☐ HANDGUN N/A | N/A | ☐ OC N/A | ☒ PHYSICAL |
| ☒ NONE | ☐ OTHER | | ☐ OTHER | ☐ NONE |

| EVIDENCE COLLECTED | EVIDENCE DESCRIPTION | DISPOSITION | WEAPON | BIO HAZARD |
|---|---|---|---|---|
| ☐ YES N/A ☐ NO | N/A | N/A | ☐ YES N/A ☐ NO | ☐ YES N/A ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED | BODILY FLUID EXPOSURE | SCIF3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | N/A | N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

NARRATIVE:

ON FRIDAY, OCTOBER 10, 2003, AT APPROXIMATELY 1607 HOURS WHILE PERFORMING MY DUTIES AS DELTA 1 FLOOR OFFICER 11. I RESPONDED TO AN AUDIBLE ALARM IN DELTA 2 A POD. UPON ARRIVING TO CELL 101 I OBSERVED INMATE CHANDLER K-25679 IN THE PRONE POSITION, RESISTING STAFF INSIDE HIS CELL. I IMMEDIATELY ASKED THE CONTROL OFFICER TO PASS DOWN THE MECHANICAL LEG RESTRAINTS. FOLLOWING, I HANDED THE RESTRAINTS TO OFFICER BOCK, WHO THAN APPLIED THEM. AFTER, SGT VASQUEZ INSTRUCTED ME TO ASSIST WITH THE ESCORT TEAM TO CARRY CHANDLER TO WALK/ALONE YARD/CELL #1. I IMMEDIATELY MAINTAINED A FIRM GRASPED UNDER CHANDLER'S RIGHT CALF. OFFICER BOCK MAINTAINED CONTROL OF CHANDLER'S LEFT CALF, WHILE OFFICER(S) ABUYEN AND GONZALES TOOK CONTROL OF HIS ARMS. PRIOR TO PLACING

| ME / TITLE / SIGNATURE OF REPORTING STAFF | BADGE / I.D. # | DATE |
|---|---|---|
| J. Kocha D. Kohn | 65173 / QS62439 | 10/10/03 |
| REVIEWER'S SIGNATURE | APPROVED ☒ | CLARIFICATION NEEDED ☐ | DATE 10/10/03 |
| GT A.H. Vasquez | | | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C-2 - SUPPLEMENT**
CDC 837 C-2

PAGE 2 OF 2

INCIDENT LOG NUMBER

NVO-FD2-03-10-0203

| NAME (LAST, FIRST, MI) Rocha N. | BADGE NUMBER 65/73 | INCIDENT DATE 10/10/03 | INCIDENT TIME 1607 |

TYPE OF INFORMATION

[X] CONTINUATION OF REPORT    [ ] ADDITIONAL INFORMATION    [ ] CLARIFICATION REQUEST

NARRATIVE:

CHANDLER IN THE WALKALONE YARD/CELL #1 OFFICER MACHUCA SEARCHED IT THOROUGHLY WITH NEGATIVE RESULTS. OFFICER BOCK THAN APPLIED THE RETENTION RING, HOWEVER, IN THE PROCESS CHANDLER STATED, "THIS IS A CRIP REVOLUTION"!

AT 1630 LVN STARR PERFORMED A MEDICAL EVALUATION AND CLEARED HIM TO OFFICER BOCK AND I WITH OUT FURTHER INCIDENT. SGT. VASQUEZ OFFERED ME EPTB, WHICH I DECLINED.

| NAME, TITLE / SIGNATURE OF REPORTING STAFF D. Rocha | | BADGE / I.D. # 65/73/2862459 | DATE 10/10/03 |
| REVIEWER'S SIGNATURE 6T | APPROVED [X] | CLARIFICATION NEEDED [ ] | DATE 10/10/03 |

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disiplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| INMATE/PAROLEE PRINTED NAME<br>Keith CANDLER | INMATE/PAROLEE'S SIGNATURE<br>*Keith Candler* | CDC NUMBER<br>K25679 | DATE SIGNED<br>11-8-07 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

MR. Keith Candler, K25679
CSP. SAC-C-2-229
P.O. Box 290066
Represa, CA 95671



UNITED STATES

$ 04.50⁰
MAILED FROM ZIP CODE 95610

LEGAL MAIL

Office of The Clerk U.S.D
Northern District of Califo
450 Golden Gate Avenue
San Francisco California
94102

Keith Candler. K25679

S.P. SAC-C-2-229

Box 290066

presa. CA 95671



RECEIVED

MAY 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Office of the clerk. U.S. Dis. Co

Northern District of California

460. Golden Gate Avenue

San Francisco. California

94102